COMMONWEALTH *vs.* FRANCIS H. LUCE.

Worcester. December 2, 1986. — March 19, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Homicide. Evidence,* Prior inconsistent statement. *Practice, Criminal,* Failure to make objection, Argument by prosecutor, Instructions to jury, Comment by prosecutor, Capital case.

Prior statements made by two witnesses to police officers which were inconsistent with their testimony at the defendant's murder trial were admissible in evidence for their probative value, where there was no objection by defense counsel during their testimony, and no request at that time for any limiting instructions. [482-483]

At the trial of a murder case, the prosecutor's reference in closing argument to the prior inconsistent statements of two witnesses did not create a substantial risk of a miscarriage of justice where the statements had been admitted as substantive evidence, and where, moreover, the judge's instructions to the jury, which were more favorable to the defendant than those to which he was entitled, limited the use of the statements to impeachment purposes. [483]

Certain remarks made by the prosecutor during closing argument in a murder case, alleged to contain improprieties including an improper appeal to sympathy, did not create a substantial risk of a miscarriage of justice in view of the judge's instructions as to the Commonwealth's burden of proof and as to the jury's responsibility to decide the case on the evidence, rather than on pity for the victim. [484]

A defendant convicted of murder in the first degree was not entitled to the entry of a verdict of a lesser degree of guilt under G. L. c. 278, § 33E, particularly in light of the ample evidence from which the jury could have found both premeditation and extreme atrocity or cruelty. [484-486]

INDICTMENT found and returned in the Superior Court Department on September 22, 1983.

The case was tried before *John J. Irwin, Jr., J.*

*James L. Sultan* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court, the defendant, Francis Luce, was found guilty of murder in the first degree. The defendant appealed and on the same day filed a motion for a new trial based on the prosecutor's closing argument. He also seeks relief under G. L. c. 278, § 33E (1984 ed.).

The motion for new trial was not acted on in the Superior Court. It should be noted that a motion for new trial should not be used to obtain review of issues which should have been raised at trial. See *Commonwealth* v. *Garcia,* 379 Mass. 422, 439 n.10 (1980). See also *Commonwealth* v. *Harrington,* 379 Mass. 446, 449-450 (1980). Our treatment of the defendant's appeal disposes of his motion for new trial since the motion and point one of his appeal discussed below raise identical issues.

On appeal the defendant argues that (1) the prosecutor made improper use in his closing argument of prior inconsistent statements made by two witnesses, the defendant's sister and his brother, and (2) other portions of closing argument were improper, created a substantial likelihood of a miscarriage of justice, and deprived the defendant of due process of law under both the Federal Constitution and the Massachusetts Declaration of Rights. He further contends that this court should exercise its power under G. L. c. 278, § 33E, and direct the entry of a verdict of a lesser degree of guilt because (1) the defendant may have been responding to the provocation of a sexual attack by the victim and (2) he may have been under the influence of alcohol and drugs at the time of the killing. He also claims that the prosecutor's improper arguments should be considered in determining whether to reduce the degree of the offense.

The conviction stemmed from a homicide which occurred on June 18, 1983. The defendant does not deny killing the victim but claims that it was in response to learning that the victim had drugged and raped him. The defendant testified that he had met the victim in June, 1983, and had been with him on three or four occasions prior to the night in question. He considered him a friend but "usually just used him as a sucker"; the victim would always pay when they went out. Luce denied having any knowledge or suspicion that the victim

might be homosexual. The defendant testified that on the night in question he met the victim at the Red Baron in Worcester; they had a drink there then went out to dinner; they went to a "country-western" establishment in Oxford, stayed for a couple of hours then went to the victim's house. The defendant drank a can of beer, felt "dizzy," felt his pants being unbuckled, but was helpless to do anything, then felt pain in his rectum. He further testified that, when he awakened, he was on the floor of the living room and had no pants on. He felt pain in his rectum and thought the victim had drugged and raped him. Luce then went upstairs, saw the victim in bed, went downstairs, got a knife from the kitchen, went back upstairs and stabbed the victim repeatedly. The defendant claims that when he realized what the victim had done to him it "made [him] nuts"; he "went crazy."

At the trial the Commonwealth called as witnesses the defendant's sister, Cecelia Vincent, and his brother, Michael Luce. Vincent testified that the defendant had stated to her that he did not know the victim was homosexual. She was questioned about a statement she had given to the police which read "about two or three weeks ago Rocky [the defendant] told me that he had met a faggot at the Red Baron." She did not deny making the statement but claimed that the police omitted some things she had told them and that she had told the police that the defendant did not know that the victim was homosexual when he met him. The defendant's brother was questioned by the prosecutor regarding a statement that he had made to the police: "Franny [the defendant] told me it was about 4:00 a.m. on Saturday morning when he woke up in this guy's bed and realized he'd been drugged . . . ." He admitted that the statement reflected what he had said to the police and that the defendant "might have" said that to him. On cross-examination by defense counsel, Michael Luce denied that the defendant had ever told him he had awakened in the victim's bed but rather that he had awakened somewhere in the house. Michael said that he merely took for granted that it was in the bed. There was no objection by defense counsel regarding the prior statements of these two witnesses, and no request at that time for any limiting instructions.

In the prosecutor's closing argument he referred to the testimony and prior statements of both of these witnesses. He discussed the sister's prior statement in relation to whether the defendant knew the victim was a homosexual, and the brother's in relation to whether the defendant was in the bedroom with the victim when he awakened. While the prosecutor was referring to the prior statement of the sister, defense counsel objected. He proffered no basis for the objection, the judge gave a limiting instruction regarding the jury's memory of the evidence as controlling over counsel's memory of the evidence,[1] and no further objection was made to the prosecutor's closing. During the charge to the jury the judge gave extensive instructions regarding prior inconsistent statements in general and their limited use. There was no objection to the charge.

1. *Prior inconsistent statements.* Normally prior inconsistent statements are not admissible to establish the truth of the matter asserted. *Commonwealth* v. *Daye,* 393 Mass. 55, 66 (1984).[2] P.J. Liacos, Massachusetts Evidence 141 (5th ed. 1981). Where there is no objection, however, and no request for a limiting instruction, the statements may be considered as substantive evidence. *Commonwealth* v. *Stewart,* 398 Mass. 535, 543 (1986). *Commonwealth* v. *Gil,* 393 Mass. 204, 220 (1984). *Commonwealth* v. *Costa,* 354 Mass. 757 (1968). Liacos, *supra* at 141-142.

(a) *Statement of the defendant's sister.* The statement made by the defendant's sister to the police afforded "some indication that the fact was different from [her] testimony." See *Commonwealth* v. *Daye, supra* at 73 n.16, quoting *Commonwealth* v. *Simmonds,* 386 Mass. 234, 242 (1982). Her statement could have been interpreted as acknowledging that the defendant

---

[1] The judge stated to the jury: "Have in mind, of course, that if any counsel assumes to tell you, or quote to you what the evidence was, ladies and gentlemen, certainly that is not the evidence unless it coincides with your memory of that fact being the evidence."

[2] A prior inconsistent statement in the form of grand jury testimony may be introduced as probative evidence where it relates to an identification and the declarant is available for cross-examination at trial. *Commonwealth* v. *Daye, supra* at 71-73.

knew the victim was homosexual, while in her testimony she clearly denied that the defendant had any such knowledge. Defense counsel, however, made no objection during the testimony nor did he request any limiting instruction. Thus, the sister's prior statement could be considered for its probative value.

(b) *Statement of the defendant's brother.* There was no objection or request for a limiting instruction at any time regarding the brother's testimony. Thus, the prior statement was entitled to whatever probative value it possessed.

2. *Prosecutor's closing argument.* The defendant claims that the prosecutor's closing argument was improper and created a substantial risk of a miscarriage of justice because he made substantive use of prior inconsistent statements. Since we have concluded that the statements were before the jury substantively, this argument must fail. Because there was no objection to the closing argument on the grounds now asserted,[3] we review it under our broad powers conferred by G. L. c. 278, § 33E. See *Commonwealth* v. *Palmariello,* 392 Mass. 126, 133 (1984); *Commonwealth* v. *Clary,* 388 Mass. 583, 594 (1983); *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 314 (1973).

3. *Review under G. L. c. 278, § 33E.* (a) Closing arguments "must be confined to the evidence and the fair inferences from the evidence." *Commonwealth* v. *Hoppin,* 387 Mass. 25, 30 (1982). See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 378 (1978). Although the prior statements of the defendant's brother and sister were admitted substantively, the judge limited their use to impeachment and thus the charge was more favorable to the defendant than was necessary.[4]

---

[3] Defense counsel did not proffer a basis for his objection during the prosecutor's closing argument. Neither did he request that the statement be used only in a limited way. In response to the objection, the judge instructed the jury that their memory of the evidence controlled over counsel's, and there was no further objection.

[4] The judge instructed the jury as follows: "That is the aspect of a case that we sometimes refer to as prior inconsistent statements.

"Now, the testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent

The defendant cites additional improprieties in the closing, claiming that the prosecutor diverted the jury's attention to extraneous and improper considerations by attempting to evoke sympathy for the victim by reference to his brother, by eliciting support for the investigating officers and by imploring the jury to act as the conscience of the community, and to say by their verdict that the defendant's acts "just won't be stood for." There was no objection to these alleged improprieties. The prosecutor's remarks must be analyzed in light of the "entire argument, as well as . . . the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Lamrini,* 392 Mass. 427, 432 (1984), quoting *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 885 (1984). The jury were properly charged on the Commonwealth's burden of proof and the jury's responsibility to decide the case on the evidence, not on pity for the victim. The judge's charge cured any possible improprieties in the prosecutor's closing.

(b) The defendant also asks that we exercise our power under G. L. c. 278, § 33E, and reduce the verdict. We therefore look to determine if the verdict is "consonant with justice," *Commonwealth* v. *Davis,* 380 Mass. 1, 15 n.20 (1980), quoting *Commonwealth* v. *Seit,* 373 Mass. 83, 94 (1977), or if it is "against the law or the weight of the evidence," G. L. c. 278, § 33E. Our power under § 33E, however, must be used with restraint. *Commonwealth* v. *Prendergast,* 385 Mass. 625, 635 (1982). After reviewing the whole case on the law and the facts, we conclude that reduction of the verdict is not warranted.

There was ample evidence from which the jury could have found both premeditation and extreme atrocity or cruelty. The defendant himself testified that he went upstairs to the bedroom. He thought about killing the victim but decided against it. He went downstairs but then went into the kitchen, got a knife and returned upstairs. He then stood over the sleeping victim for about five minutes "fighting" with himself about whether

with their testimony here at the trial. The prior statement, which means a statement made before testifying in this case in this courtroom before you, the prior statement was admitted into evidence solely for your consideration in evaluating the credibility of that witness."

to kill the victim. Premeditation may be found if the "resolution to kill was a product of cool reflection." *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978). This court has stated that there is no particular length of time required for a finding of deliberate premeditation, *Commonwealth* v. *Caine,* 366 Mass. 366, 374 (1974); reflection of a few seconds may suffice, *Commonwealth* v. *Basch,* 386 Mass. 620, 622 (1982). In determining whether the act was committed with extreme atrocity or cruelty the jury may consider the following factors: indifference to the victim's suffering, the victim's consciousness and degree of suffering, the number of blows and the manner and force with which delivered, the instrument used, the extent of the victim's injuries, and the disproportion between the means necessary to cause death and those employed. *Commonwealth* v. *Coleman,* 389 Mass. 667, 673 (1983). *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983).

According to medical testimony, there were forty-five stab wounds on the victim's body and his genitals had been amputated. One stab wound partially severed the victim's left ear and entered the auditory canal; another cut the jugular vein. The chest wounds extended completely through the heart and also penetrated the lungs. The defendant testified that he heard the victim screaming during the killing and that he did not know or did not care whether he was dead when he mutilated him. Thus, the jury's verdict was not against the weight of the evidence. Furthermore, this court does not sit as "a second jury, which must be convinced beyond a reasonable doubt of the guilt of a defendant by reading the reported evidence, without the advantage of seeing and hearing the witnesses." *Commonwealth* v. *Smith,* 357 Mass. 168, 181 (1970).

In mitigation the defendant points to the fact that he is uneducated, and that on the night of the incident he may have been under the influence of alcohol or drugs and was provoked by the belief that the victim had drugged and raped him. These factors, particularly in light of the evidence of both premeditation and extreme atrocity or cruelty, do not warrant a reduction under § 33E. Furthermore, the jury were fully instructed on

the degrees of murder, manslaughter, provocation, and impairment due to drugs or intoxication.

For the reasons stated above, we decline to exercise our authority under G. L. c. 278, § 33E.

*Judgment affirmed.*