COMMONWEALTH vs. RONALD A. KEATON.

No. 92-P-1673.

Essex. September 9, 1993. - February 22, 1994.

Present: DREBEN, SMITH, & GREENBERG, JJ.

*Rape. Breaking and Entering. Alibi. Evidence,* Fingerprints, Alibi, Prior
inconsistent statement. *Jury and Jurors. Practice, Criminal,* Instruc-
tions to jury.

At a criminal trial, there was sufficient evidence, including the defendant's
fingerprint in the victim's apartment, together with circumstantial evi-
dence producing reasonable inferences, to submit the case to the jury.
[85-86]

The judge at a criminal trial acted properly in not dismissing an allegedly
sleeping juror, where the judge specifically found, based on his own ob-
servation, that the juror was awake, and where no information about
the juror's somnolence was brought to the judge's attention by way of
affidavit. [86-88]

At a criminal trial, where defense counsel did not object to the admission
of a witness's prior inconsistent statements or request a limiting instruc-
tion, the statements could properly be considered as substantive evi-
dence. [88]

There was no error at a criminal trial in the judge's omission of a specific
alibi instruction requested by the defendant, where the judge gave ex-
tended and clear instructions on the Commonwealth's burden of proof.
[88-89]

INDICTMENTS found and returned in the Superior Court
Department on April 1, 1990.

The cases were tried before *John T. Ronan,* J.

*Margaret H. Carter* for the defendant.

*William M. Harrington,* Assistant District Attorney, for
the Commonwealth.

GREENBERG, J. Following a six-day jury trial in the Supe-
rior Court, the defendant was convicted of aggravated rape
and breaking and entering a dwelling house in the nighttime
with intent to commit a felony and assault therein. The de-

fendant argues that the judge erred in (1) denying a motion for a required finding of not guilty at the close of the Commonwealth's case, (2) permitting a "sleeping juror" to remain on the jury, (3) failing to give a specific alibi instruction, and (4) not giving an instruction on the limited use of prior inconsistent statements. We affirm.

1. *Motion for required finding.* In determining whether a motion for a required finding of not guilty was properly denied, the evidence must be viewed in the light most favorable to the prosecution. *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). In order to carry its burden, the Commonwealth brought, in addition to the victim, twelve witnesses in its case-in-chief. To follow is a summary of the facts the jury could have found. The only issue is the identity of the perpetrator of the crime.

The victim lived alone in a three-room apartment in Gloucester. On the evening of March 10, 1990, she returned from work at 8:00 or 9:00 P.M., ate supper, cleaned her apartment, watched television, and made several telephone calls to her boyfriend. The last call was between 12:30 and 1:00 A.M. on March 11. During the next hour, the victim, dressed in a nightshirt and sweatpants, rested on a bed she had pulled out from a convertible sofa in her living room. With her television, the kitchen lights, and the lamp beside the bed still on, she fell asleep.

Sometime later, she was awakened by someone sitting on her, straddling her lower stomach area. Her face was covered by a cloth, preventing her from viewing the attacker. At first, she thought that the attacker was her boyfriend; he had been given a key to her apartment. She could not identify her attacker by voice. The victim testified that the attacker was large, had a deep voice, smelled of alcohol, and spoke as if he had something in his mouth. When she began to scream, the attacker stifled her by pressing the cloth against her face with his hand and stuffing a portion of the cloth into her mouth. He relaxed his hand, and she began to cry out again. The attacker stuck his fingers in her mouth, threatened to

kill her if she did not stop screaming, and told her not to try to remove the cloth.

There followed an extended, nonconsensual sexual episode, towards the end of which the attacker asked her if he had hurt her and if "it was good for [her]." When she asked him if he was going to kill her, he responded in the negative. The attacker then dressed himself, removed the cloth from her face, and replaced it with a bed sheet. He walked to the kitchen area of the apartment and returned with a glass of water from which she drank by holding the stem of the glass while the attacker held the sheet over her face.[1]

The attacker brought the water glass back to the kitchen area and dumped the remaining water into the sink. He then warned her not to remove the sheet from her face. After telling her that he would lock the door, the attacker left the apartment. She heard the door close and lock.[2] After a few minutes, she removed the sheet and found that she was in the dark and that neither her electricity nor her telephone was functioning.[3] She also discovered that her cats had been closeted in the bedroom. She looked out a window overlooking the parking lot but did not see anyone leaving the building or the parking lot.

The victim unlocked and opened her apartment door and saw the defendant, her next-door neighbor, standing alone at the end of the hallway, to the left of her apartment. Five or ten minutes had passed from the time that the attacker left her apartment. She motioned for the defendant to come to

---

[1]The victim testified that the glass was a stemmed goblet that her mother had brought to her a few weeks earlier. The glass had not been used since she had placed it in her cupboard upon receiving it.

[2]The apartment door was fitted with a deadbolt that could be locked from the outside of the apartment only by use of a key.

[3]There was testimony by a police detective that the digital clock was flashing 4:18 A.M. at 8:58 A.M. If this is considered with the victim's testimony that if electrical power to the clock was interrupted and restored the clock would begin at 12:00 and flash until reset, the inference can be drawn, if helpful, that the power was restored to the apartment at 4:40 A.M. The detective also testified that at 9:30 A.M., in a separate utility closet in the building, all of the doors to the circuit breakers and to the telephone service box were open.

her and asked him to summon the police. The defendant asked her what was wrong. This exchange was repeated four or five times before she told the defendant that someone had broken into her apartment. The defendant then walked towards his apartment, passed the apartment, and walked to the building's exit. A few minutes later, the victim made her way out of the building to the parking lot, where she again saw the defendant. The defendant followed ten or twenty feet behind her as she walked to her car and repeatedly asked her where she was going and what she was doing. She then drove to the Gloucester police station, an eleven-minute ride, and reported the incident at 5:09 A.M.

Later, back at her apartment, the victim pointed out to police detectives several items the attacker might have moved, including the goblet, which had been placed on the counter next to the kitchen sink, all of which were taken by the police for analysis. The defendant's thumbprint was found on the goblet; additional fingerprints on the goblet and on an ashtray were not identifiable.

The defendant was employed as a maintenance man for the apartment building from June 19 to July 10, 1989. Because of that work he was issued master keys, which he returned when he was terminated. During his employment, he had access to a key duplicating machine.

In February of 1990, after he had supposedly returned his keys, the defendant provided another tenant in the victim's building access to a locked vacant apartment in the apartment complex, and, at her request, he demonstrated that he could also unlock her apartment door with the key. The defendant told the tenant that he got the key when he was a maintenance man. Also, when another tenant in the building locked herself out of her apartment in the winter of 1989-1990, the defendant unlocked her door with a key and told her that he wanted to conceal his possession of such a key from the building manager.

The defendant presented an alibi defense. The mother of a friend of the defendant testified that the defendant was watching television with her son in her home, a three-minute

ride from the victim's apartment building, from about 12:20 to 3:30 A.M. on March 11, 1990. The defendant's fiancée testified that the defendant arrived home to their shared apartment at 3:50 A.M.

The defendant's primary contention is that the Commonwealth's case was based solely upon his fingerprint found on the victim's glassware. The general principle is "that the presence of a fingerprint at the scene of the crime is not by itself a sufficient basis for submitting a case to a jury. The prosecution must couple the fingerprints with evidence which reasonably excludes the hypothesis that the fingerprints were impressed at a time other than when the crime was being committed." (Citations omitted.) *Commonwealth* v. *Fazzino*, 27 Mass. App. Ct. 485, 487 (1989). *Commonwealth* v. *Baptista*, 32 Mass. App. Ct. 910, 911 (1992). This case is distinguishable on its facts from both *Fazzino* and *Baptista*. In those cases, the fingerprints were found in inculpatory places, but there was no direct evidence linking the commission of the crime with the act of impressing the fingerprints. In this case, on the contrary, the victim provided direct testimony regarding the impression of the fingerprint on the goblet during the commission of the crime and also gave testimony that there could have been no other occasion for the defendant or anyone else to have touched the goblet. In this instance, the fingerprint evidence strongly linked the defendant to the crime. See *Commonwealth* v. *Fazzino, supra* at 488.

Moreover, in addition to the fingerprint evidence, there was evidence of the defendant's presence outside the apartment shortly after the crime, see *Commonwealth* v. *Kelley*, 370 Mass. 147, 150-151 (1976), and of consciousness of guilt (the defendant's peculiar behavior when the victim requested his assistance). *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 803 (1992). The defendant argues that this evidence could lead to a conviction only if a trier of fact relied upon impermissible surmise and conjecture. While a conviction cannot rest upon the piling of inference upon inference or on conjecture and speculation, *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981), "[c]ircumstantial evidence may produce infer-

ences, and these inferences 'need only be reasonable and possible, . . . not necessary or inescapable.' *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989), quoting from *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977)." *Commonwealth* v. *Hall*, 32 Mass. App. Ct. 951, 952 (1992). "A conviction may be properly based entirely on circumstantial evidence so long as that evidence establishes the defendant's guilt beyond a reasonable doubt." *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992), quoted in *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 (1992). Based upon the Commonwealth's evidence, it was reasonable and possible for a trier of fact to infer the defendant's culpability beyond a reasonable doubt.

The defendant also argues unpersuasively that because persons other than the defendant could have committed the crime the evidence of the defendant's presence is meaningless. "In order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime". *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965). *Commonwealth* v. *Salemme*, 395 Mass. 594, 601 (1985). That a person other than the accused might have had the opportunity to do the act goes only to the weight and credibility of the evidence. *Commonwealth* v. *Lussier*, 364 Mass. 414, 421 (1973).

The judge properly denied the defendant's motion for a required finding of not guilty.

2. *The sleeping juror.* During a lobby conference held before the second day of the trial, the defense attorney informed the judge that during the Commonwealth's opening statement and during some direct examination of the victim he had observed a juror sleeping. To this the judge responded that the juror simply had "a sour face. [That juror] sits in the corner, Seat No. 1, where it gets hot." The defense attorney then mentioned that other attorneys in the courtroom noticed that the juror slept through most of the session. A motion for a mistrial was made but the judge did not waver from his "sour face" ruling and denied the motion. Before sentencing, five days after the verdict and the dismissal of

the jurors, defense counsel again raised the issue. The judge pointed out that no affidavits from courtroom observers were proffered in support of his contention. The judge then specifically found that the juror was awake, that based on his observation "he was the juror who caught [on] faster than anybody else," and that the courtroom observers were too far away (fifty feet) to make an accurate assessment of the juror's consciousness.

A fundamental tenet of our criminal justice system, embodied in the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution, guarantees a defendant an impartial jury. See, e.g., *Ristaino* v. *Ross*, 424 U.S. 589, 595 n.6 (1976); *Commonwealth* v. *Soares*, 377 Mass. 461, 477-478, cert. denied, 444 U.S. 881 (1979). Article 12 of the Declaration of Rights states, in relevant part, "And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgments of his peers, or the law of the land." The right to a trial by jury is not trivial. If a juror sleeps through testimony, the criminal defendant's fundamental right to a fair trial may be placed in jeopardy. With regard to this fundamental right, the defendant questions whether the trial judge acted properly in not dismissing the allegedly sleeping juror. We think he did.

It was incumbent upon the judge to ensure that all the jurors heard the evidence. Meditation may be mistaken for somnolence. The judge considered the information defense counsel supplied, rejected it, and put his reasons for retaining the juror on the record. See *People* v. *Valerio*, 141 A.D.2d 585, 586 (N.Y. 1988). Defense counsel offered no compelling reasons under G. L. c. 234A, § 39, that had the effect of alerting the judge to the necessity of conducting a hearing. In seeking to discharge the juror, it was his duty to provide the information in the form of affidavits. None was provided.

The judge, notably aware of his decision's exposure on appeal, specifically found, based on his own observation, that

the juror was awake and refused to inquire further, especially in the absence of any affidavits. There was no abuse of his discretion.

3. *Prior inconsistent statements.* In its rebuttal case, the Commonwealth introduced testimony of a police detective to the effect that the defendant's fiancée told him, and he recorded, during his original investigation on the morning of the incident, that the defendant returned from work to their shared apartment between 4:30 and 5:00 A.M. on March 11, 1990. That was inconsistent — at least arguably so — with the fiancée's testimony on direct and cross-examination that the defendant arrived home at 3:50 A.M.[4] The Commonwealth obviously introduced the rebuttal evidence to impeach the alibi testimony provided by the fiancée and to establish that the defendant arrived home shortly after the crime occurred. Here defense counsel did not object, nor did he request a limiting instruction.

Language in *Commonwealth* v. *Luce*, 399 Mass. 479 (1987), is dispositive of the defendant's contention that the judge erred in not charging the jury on the limited effect of prior inconsistent statements: "Normally prior inconsistent statements are not admissible to establish the truth of the matter asserted. Where there is no objection, however, and no request for a limiting instruction, the statements may be considered as substantive evidence" (citations and footnote omitted). *Id.* at 482.

4. *Failure to give alibi instruction.* Assuming, without deciding, that the issue was properly raised and is before us on appeal, we decide it was not error to omit the specific alibi instruction submitted by defense counsel. "[I]t cannot be counted as a mistake to omit the [alibi] charge, if it is otherwise made clear that the burden of showing that the defendant was present at the time and place, and thus capable of

---

[4]The electricity in the victim's apartment was evidently restored at 4:40 A.M. See note 3, *supra.* The victim arrived at the police station sometime before 5:09 A.M. Therefore, if the defendant arrived home at 3:50 A.M., as his fiancée originally testified, he had an effective alibi. If he arrived home between 4:30 and 5:00 A.M., inferences can be drawn in the Commonwealth's favor.

committing the crime, remains on the Commonwealth." *Commonwealth* v. *Medina*, 380 Mass. 565, 579 (1980). "The legal sufficiency of the instructions to the jury is to be judged on the basis of the charge as a whole, and not on the basis of limited or isolated portions of it." *Commonwealth* v. *Redmond*, 357 Mass. 333, 342 (1970). In his instructions, the judge raised and explained the Commonwealth's burden no less than six times in his original charge, expounding on the burden extendedly twice. *Commonwealth* v. *Therrien*, 371 Mass. 203, 207 (1976). See also *Commonwealth* v. *Robinson*, 382 Mass. 189, 198-199 (1981). The judge also specifically stated that "identity, obviously, is a matter that the Commonwealth must prove beyond a reasonable doubt from the evidence." Moreover, on the second day of deliberations the jury requested a further explanation of the Commonwealth's burden. To this request, the judge repeated twice the time-honored example from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), and quoted from *Commonwealth* v. *Gerald*, 356 Mass. 386, 389-390 (1969). For the reasons stated in *Medina*, and in light of the instructions making the Commonwealth's burden of proof crystal clear, it was not error to omit the specific alibi instruction.

*Judgment affirmed.*