# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69217-8-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| MICHAEL JOSEPH BAILEY, | ) | UNPUBLISHED OPINION |
| Respondent. | ) ) | FILED: October 27, 2014 |

SPEARMAN, C.J. — After Michael Bailey was convicted of robbery in the first degree, he filed a motion for new trial, alleging he was denied a fair trial because several jurors did not hear the testimony of a key witness. The motion was supported by declarations from Bailey's attorney and her intern regarding conversations with some members of the jury following the verdict. The declarations asserted that one juror told them, "half of them could not hear" the witness's testimony and that a second juror said, "the jury told the Court's bailiff about the problem. . . ." Clerk's Papers (CP) at 75-78. Bailey did not ask the court to query the jury about its ability to hear the testimony in question prior to ruling. The trial court denied the motion for new trial. Bailey appeals, arguing the trial

court erred when it denied his motion without first recalling the jury for questioning. He also argues that the assistance provided by his trial counsel was ineffective. We affirm.

## FACTS

On the evening of October 16, 2011, Daniel Chang was in the Muckleshoot Casino in Auburn, Washington. He had been at the casino for several hours and around midnight he was at a craps table. Michael Bailey and Ashley Valle approached Chang and began conversing with him. Bailey soon left, but Valle stayed behind and continued talking to Chang. On three occasions, Valle left the craps table for about 20 minutes, but each time she returned and continued the conversation with Chang.

Eventually Chang and Valle exchanged telephone numbers and made plans to leave the casino together. By the time Chang and Valle decided to leave, Chang had amassed about $5,600 worth of casino chips. Before leaving, Valle arranged to meet Chang in the parking lot after "tak[ing] care of some things with her friend," Bailey. 3 [1] Verbatim Report of Proceedings (VRP) at 119.

Chang testified that upon meeting Valle in the parking lot, the two left the casino together in Valle's car. She drove to a secluded, dimly lit area, parked the car, and began sending a series of text messages on her phone. When Chang

---

[1] Verbatim Report of Proceedings (VRP): (1) May 3, 2012; (2) May 7,9,24, and 29, 2012; (3) May 30, 3012; (4) May 31, 2012); (5) June 4, 2012 and August 17, 2012; (6) June 5, 6, and 7, 2012.

asked whether they were going to get something to eat, Valle pulled some marijuana from her purse and began smoking it. Chang declined to smoke with her because he "doesn't do drugs." 3 VRP at 129. Chang testified that the situation was beginning to make him very nervous and he decided he should leave. He told Valle that he was going to get some air and got out of the car.

Chang walked about five feet from the car when a man approached him from behind and put a knife to his throat. 3 VRP at 131. The man said "if you move, I'm going to kill you." 3 VRP at 132. Chang explained that he suspected Bailey was his assailant when he first heard the assailant's voice and because, as the assailant stood behind him, he felt about the same build as Bailey. After a few moments, when the man had made no demands of him, Chang decided to run. He pushed away with his right hand and began to run. As he did this, he got a glance at the man and confirmed that it was Bailey. Chang got no more than ten feet away before Bailey grabbed him by the hood of his sweatshirt, causing Chang to fall to his knees. When Bailey placed the knife even harder against his neck, Chang put up his hands and asked "[w]hat do you want from me." 3 VRP at 134. Bailey replied, "[I]f you look at me again, or if you, you know, whatever, you know, do anything, I'm going to kill you; I'm going to cut you." 3 VRP at 134.

Bailey told Chang to take off his pants. Chang did so and gave his pants to Bailey. After hearing nothing for a few minutes, Chang put on his shoes and ran. During the course of his escape, Chang climbed through several barbed wire

3

fences. He sustained a number of lacerations and also lost whatever remaining clothes he had on. After knocking on the doors of a few houses to ask for help, a man offered Chang assistance and called the police.

Detective Buie Arneson of the Auburn Police Department was assigned to investigate the case. Detective Arneson testified that he showed two separate photo montages to Chang, one containing a photo of Valle and the other a photo of Bailey. Chang identified one photo from the first montage as that of Valle, but he was unable to positively identify a person from the montage containing Bailey's photo. Detective Arneson also identified photographs that he took of Chang's neck, which showed "a small, thin red line next to some other redness" consistent with where Chang said that Bailey had held the knife.

Detective Arneson testified that after the arrest of Bailey and Valle, two cell phones had been recovered from them and placed into evidence. Pursuant to a search warrant, an effort was made to search both of the phones. A lock on one of the phones prevented the disclosure of any information. The other phone revealed an exchange of several text messages with a phone number associated with Valle at about the time of the robbery.[2] Text messages to Valle's phone number read: "I got my eye on u," "[n]o kissing in the mouth," "[m]ake sure that

---

[2] In addition, in her testimony, Valle conceded that she had exchanged texts with Bailey that night but could not recall the specific content of the texts. Bailey does not appear to dispute that the evidence reasonably supports the conclusion that the phone searched belonged to him.

on him first," and "does he have the cpis [sic] on him?" Messages received from Valle's phone number read: "Just do it" and "Hury" [sic]. Exhibit 10.

The latter two messages from Valle were received at approximately 2:25 a.m. A few minutes later, at about 2:30 a.m., a witness who lived near the location of the robbery, testified to being awakened by a man behind her apartment building yelling "[g]et the jeans off or I'll cut you" and a second man quietly saying "I can't." 2 VRP at 31-32; Exhibit 10. The witness called 911 to report the incident.

In her testimony, Valle admitted to pleading guilty to two counts of first degree theft and one count of second degree assault as a result of the incident with Chang. She agreed that in her guilty plea statement, she admitted assisting Bailey in the robbery. But she denied that the statement was true, insisting that she pleaded guilty because she was scared and because she was embarrassed about telling her story to "fourteen strangers." 5 VRP at 171. Valle testified that Chang was highly intoxicated and when he got into her car he immediately "took his pants off" and moved to the backseat. While she was driving, Chang tried to rub her inner legs and kiss her face. 5 VRP at 163. She parked the car near her apartment and asked Chang to "slow down." 5 VRP at 164. At that point, according to Valle, Chang got angry because Valle was not responding to his sexual advances. He stole her car keys and said he would only give them back in exchange for sexual favors. She testified that she was eventually able to get her

car keys back, at which point she drove away quickly, leaving Chang on the street, naked from the waist down.

Valle also testified that she had dropped Bailey off elsewhere some time prior to this incident and did not text message him while she was with Chang. She also claimed not to have seen Bailey in the area during her encounter with Chang in the car.

On June 7, 2012, a jury found Bailey guilty of robbery in the first degree. On June 18, 2012, Bailey filed a motion for a new trial under CrR 7.5(a)(5), (7) and (8).[3] He submitted declarations from his trial counsel and her intern in support of the motion, which set forth, in relevant part:

---

[3] CrR 7.5 states in relevant part:

(a)**Grounds for New Trial**. The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected:

. . .

(5) Irregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial;

. . .

(7) That the verdict or decision is contrary to law and the evidence;

(8) That substantial justice has not been done.

When the motion is based on matters outside the record, the facts shall be shown by affidavit.

3. Following the verdict, several jurors[4] remained to speak with both counsel.

. . .

5. Juror No. 4...noted, and the jurors present agreed, that half of them could not hear Ashley Valle during her testimony.

6. One of the female jurors...(either Juror No. 2, 8 or 9), indicated the jury told the Court's bailiff about the problem and that some of them had not heard Ms. Ashley's [sic] testimony.

7. These two jurors indicated that because the testimony was not to be repeated, they decided to rely on the notes of the jurors who could hear.

8. Ashley Valle's testimony was crucial to the Defense case in challenging the allegations made against him because it supported the Defense theory of the case.

CP at 75-78. Bailey did not ask the court to recall the jury and query them as to their ability to hear Valle's testimony and, other than the declarations of his counsel and her intern, he offered no evidence or testimony. On August 18, 2012, after hearing oral argument, the court denied the motion for new trial, finding that Bailey failed to prove that he was prevented from having a fair trial, that the jury's decision was contrary to the law and the evidence, or that substantial justice had not been done. The trial court sentenced Bailey to a 51 month term of confinement, the bottom of the standard range, plus 24 months for a statutory deadly weapon enhancement. Bailey appeals.

---

[4] At oral argument on the motion, Bailey's attorney clarified that nine or ten of the jurors remained to speak with the attorneys after deliberations.

## DISCUSSION

Both the United States and Washington constitutions guarantee a criminal defendant the right to a fair and impartial jury trial. U.S. CONST. Amend. V, VI; WASH. CONST. art. I, §§ 3, 22; State v. Jackson, 75 Wn. App. 537, 543, 879 P.2d 307 (1994) (juror bias). "To effectuate this fundamental right it is incumbent on the trial judge to ensure that all the jurors hear the evidence, the arguments, and the judge's legal instructions." Commonwealth v. Braun, 74 Mass.App.Ct. 904, 905, 905 N.E.2d 124 (2009) (citing Commonwealth v. Keaton, 36 Mass.App.Ct. 81, 87, 628 N.E.2d 1286 (1994)); see also State v. Denney, 4 Wn. App. 604, 607, 483 P.2d 141 (1971) (acknowledging that a defendant may be prejudiced in his right to a fair trial if one of the jurors was unable to hear material testimony).

Bailey argues that the trial court erred when it denied his motion for a new trial without, sua sponte, recalling and querying the jurors to determine what testimony they could or could not hear and whether their inability to hear impacted their ability to fairly and completely weigh the evidence. He argues this failure to recall and question the jurors deprived the trial court of the information necessary to properly exercise its discretion. We disagree.

A trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion. State v. Balisok, 123 Wn.2d 114, 117, 866 P.2d 631 (1994). An abuse of discretion occurs "when a decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. A discretionary decision rests

8

on 'untenable grounds' or is based on 'untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'" Mayer v. Sto Indus., Inc., 156 Wn. 2d 677, 684, 132 P.3d 115, 118 (2006) (internal citations omitted).

Bailey likens this case to Jackson, 75 Wn. App. 537, but the case is distinguishable.[5] In Jackson, the defendant filed a motion for a new trial after having been found guilty by a jury of one count each of first degree robbery and first degree burglary. The motion was supported by a juror's certification relating specific comments and statements made by "juror X"—a white man—during deliberations that "taken as a whole, create[d] a clear inference of racial bias." 75 Wn. App. at 543. We noted that resolution of the case turned on witness credibility and that Jackson, who was African-American, had presented five African-American witnesses in support of an alibi defense, while the State's two witnesses were white. Id. at 539. Thus, if juror X held certain discriminatory views it "could affect his ability to decide Jackson's case fairly and impartially." Id. at 543. We concluded that because Jackson had made a prima facie showing of

---

[5] The parties appear to agree there is no Washington case law on point. A similar fact pattern appears in one published case, Denney, supra. But both Bailey and the State agree that Denney is distinguishable because in that case, the testimony that the juror was unable to hear was immaterial to the ultimate issues at trial. Here, the jurors are alleged to have had difficulty hearing testimony which was central to the ultimate issues at trial.

racial bias on the part of one of the jurors, it was error for the trial court to rule on Jackson's motion without conducting an evidentiary hearing, even in the absence of a request to do so.[6] Id. at 543-44.

Bailey contends that, like Jackson, the declarations of his attorney and her intern are sufficient to establish a prima facie showing that he did not receive a fair trial. Thus, he argues the trial court abused its discretion when it failed to sua sponte recall the jurors for questioning. We disagree. As the trial court noted in this case, the declarations as to the jurors' comments were scant in detail and inconclusive. Although one of the jurors reported that "half of them could not hear Ashley Valle during her testimony" and another juror reported that "the jury" told the court's bailiff that some of them had not heard Valle's testimony, it was not at all clear whether the jurors who reported the concern were unable to hear the testimony themselves or were expressing what other jurors had said.[7] CP at 76, 78. Nor was it clear what portion of Valle's testimony, if any, the jurors were unable to hear. At oral argument before the trial court, Bailey's attorney conceded that she was not certain what percentage of Valle's testimony the jurors were unable to hear. Although it was her impression that six jurors failed to

---

[6] We noted that Jackson, not only did not request an evidentiary hearing, he objected to the State's request for one. We concluded that Jackson's refusal to agree to such a hearing did not waive his right to argue he was denied the right to due process, because he "was entitled to take the position that he had made a sufficient showing of racial bias." Jackson, 75 Wn. App. at 544, n.4.

[7] There is no indication in the record as to whether the court's bailiff agreed that the jurors had reported problems hearing the witness.

hear any of the testimony, she acknowledged that none of the jurors with whom she spoke were specific about this point.

Jackson is also distinguishable because in this case there was substantial evidence before the trial court that contradicted the assertion that the jurors were unable to hear Valle's testimony. Valle's testimony lasted for two days, during which time a microphone was used to amplify her voice. There were three instances in which Valle was asked to speak up. First, the prosecutor asked Valle to speak up during direct examination on June 4, 2012. Second, during cross-examination the same day, the prosecutor stated he had not heard Valle's answer to a question and she was asked to repeat it. And third, during her June 5, 2012 testimony, the trial court reminded Valle to keep her voice up. But, there is no indication in the record that the jurors expressed in any manner to the trial court that they had a problem hearing Valle. No notes were received from the jury during its deliberations asking to hear Valle's testimony again. In addition, other than the times indicated above, no other person in the courtroom, including Bailey and his attorney, complained of being unable to hear Valle testify. Thus, Jackson is of no help to Bailey.

In support of his arguments Bailey also cites State v. Jorden, 103 Wn. App. 221, 227-29, 11 P.3d 866 (2000) and several foreign cases involving jurors who have fallen asleep during portions of a trial: State v. Hampton, 201 Wis.2d 662, 666-67, 549 N.W.2d 756 (1996); People v. South, 177 A.D.2d 607, 607-08,

No. 69217-8-I/12

576 N.Y.S.2d 314 (1991); People v. Valerio, 141 AD.2d 585, 586, 529 N.Y.S.2d 350 (1988); and Braun, 74 Mass. App. Ct. at 905. His reliance on these cases is misplaced.

In Jorden, the defendant argued on appeal that it was error for the trial court to deny his request that the court question a juror before dismissing her for being inattentive during the trial. He contended that in the absence of such an inquiry the court failed to establish whether the juror had missed important testimony or whether her conduct had prejudiced either party. We found the defendant's reliance on CrR 6.5 was misplaced because the rule only applies when a case has already gone to the jury and, of necessity, an alternate juror must be recalled to substitute for a juror unable to continue.[8] Id. at 227. In that circumstance, inquiry of the excused juror and the alternate may be necessary to "verif[y] that the juror is unable to serve ... [and] that the alternate has remained impartial after being temporarily dismissed." Id. (Citations omitted). But we were "unwilling to impose on the trial court a mandatory format for establishing such a record. Instead the trial judge has discretion to hear and resolve the misconduct

---

[8] CrR 6.5 provides in relevant part:

When jurors are temporarily excused but not discharged, the trial judge shall take appropriate steps to protect alternate jurors from influence, interference or publicity, which might affect that jurors ability to remain impartial and the trial judge may conduct brief voir dire before seating such alternate juror for any trial or deliberations.

12

issue in a way that avoids tainting the juror and, thus, avoids creating prejudice against either party." Id. at 229.

Bailey argues that because the Jorden court's concerns regarding tainting or prejudicing a juror are not present in this case we should reach a different result. We disagree. The trial court allowed the parties to argue and to present evidence.[9] The judge also appropriately relied on his own observations of the jury during the trial. Id. at 229. Additionally, it was undisputed that the court had an amplification system for testifying witnesses and that neither the jurors, court staff nor counsel (except upon the three occasions previously noted) had complained of difficulty hearing Valle's testimony. As in Jorden, there was ample evidence before the trial judge to enable him to decide whether Bailey was entitled to a new trial.

Bailey's reliance on the "sleeping juror" cases is likewise misplaced. In each case, the trial court had taken notice of a juror who appeared to be asleep, dozing, or had closed eyes during portions of trial; thus, it was undisputed that the jurors in question may have missed pertinent testimony. In each case, the trial court declined to conduct an evidentiary hearing or grant a mistrial, despite its own observations of an apparently sleeping juror. And, in each case, the appellate court reversed the defendant's conviction, finding that the trial court

---

[9] Although Bailey did not offer any witnesses, the trial court expressed a willingness to hear testimony on the issue, if requested.

had prevented itself from obtaining the information necessary to a proper exercise of discretion as to the juror's fitness. By contrast, in this case, neither the trial court nor any other trial participant took notice of any hearing difficulty demonstrated or expressed by the jury.

We conclude the trial court did not abuse its discretion when it did not sua sponte recall the jury for questioning prior to ruling on Bailey's motion for a new trial. There was no error.

Bailey also argues that his trial counsel's failure to ask the court to recall and query the jury constituted ineffective assistance. We begin with the strong presumption that counsel's representation was effective and competent. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). For Bailey to overcome this strong presumption, he must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). To show deficient performance, Bailey must show that his lawyer's performance fell below an objective standard of reasonableness based on all the circumstances. Id. (Citing McFarland, 127 Wn.2d at 344-35). Conduct that may be characterized as legitimate strategy or tactics is not deficient. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Prejudice is established by showing there is a reasonable probability that, but for

counsel's error, the outcome of the proceeding would have been different. <u>Id.</u> at 34. Bailey cannot meet this burden.

First, Bailey does not establish that his attorney's decision to not ask the court to recall the juror for questioning was not a legitimate tactical choice. Bailey's attorney, having interviewed some of the jurors, may have concluded that Bailey's best chance of prevailing on the motion was to present the evidence through declarations of counsel and her intern instead of the actual testimony of the jurors. Given counsel's representations to the trial court at oral argument, it is unclear what the jurors would have said under oath had they known it was important to be specific and precise in their responses. Additionally, more than two months had passed since counsel had last spoken to the jurors. It was not unreasonable for counsel to conclude that their memories regarding what they were able to hear of Valle's testimony may have faded and been less persuasive than the assertions in her and her intern's declarations.

Moreover, even if counsel was deficient, Bailey cannot establish that he was prejudiced. First, he cannot show that even had the request been made, it would have been granted. Second, even if the request had been granted, Bailey cannot show that the result would have been a new trial. Bailey's argument that his trial counsel's assistance was ineffective fails.

## Statement of Additional Grounds

In a statement of additional grounds for review under RAP 10.10, Bailey asserts that the prosecutor committed misconduct during closing arguments by misleading the jury and improperly shifting the burden of proof. The argument lacks merit.

In order to establish prosecutorial misconduct, a defendant must prove that the prosecutor's conduct was improper and that it prejudiced his right to a fair trial. State v. Gregory, 158 Wn.2d 759, 858-59, 147 P.3d 1201 (2006); State v. Jackson, 150 Wn. App. 877, 882, 209 P.3d 553 (2009). A prosecuting attorney commits misconduct by making a closing argument that shifts and misstates the burden of proof. State v. Dixon, 150 Wn. App. 46, 55, 207 P.3d 459 (2009); United States v. Perlaza, 429 F.3d 1149, 1171 (9th Cir. 2006). Similarly, "[m]isstating the basis on which the jury can acquit insidiously shifts the requirement that the State prove the defendant's guilt beyond a reasonable doubt. In re Glasmann, 175 Wn.2d 696, 713, 286 P.3d 673 (2012) (citing State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996)). Failure to object to a prosecutor's improper remark constitutes a waiver, unless the remark was so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been cured by an instruction to the jury. Gregory, 158 Wn.2d at 858-59 (internal citations omitted).

16

In this case, the State's closing argument included several statements by the prosecutor that a mark on Chang's neck after the alleged incident was from a knife. Bailey did not object to these statements at trial. He now argues that (1) the statements were false or misleading and therefore constituted misconduct, (2) the misconduct was flagrant and ill-intentioned, and (3) the prosecutor's misconduct was presumptively prejudicial because it infringed his constitutional right to a fair trial. These arguments lack merit.

The State's theory at trial was that Bailey had robbed Chang at knifepoint. In support of this theory, Chang testified that Bailey committed these acts. And, although Chang denied being cut by Bailey's knife, he also identified a photo of his neck that showed "where the knife marked." He indicated that there was a red line visible in the photo "consistent with where the knife had been on [his] neck." 3 VRP at 145. Thus, the prosecutor's statements that the mark on Chang's neck was consistent with a knife being held up to it were not false or misleading, but merely reflected the evidence presented by the State at trial.

Bailey also argues that the prosecutor improperly shifted the burden of proof. He argues again that the misconduct was flagrant and ill-intentioned and the prosecutor's misconduct was presumptively prejudicial because it infringed his constitutional right to a fair trial. We disagree.

With respect to the State's burden of proof, the prosecutor made the following statements:

> Going back to those six elements, there are things I don't have to prove. I don't have to prove the value of what was taken off of Daniel Chang; I don't have to prove all of Daniel Chang's movements that particular night. All I've got to prove is that he got out of the car and somebody used a knife to take property from him.

6 VRP at 451. Prior to making these statements, the prosecutor directed the jurors to the "reasonable doubt" and "to convict" instructions, walking them through the State's burden of proof and the six elements of robbery in the first degree "one by one." 6 VRP at 428-33. Only then did he point out, by way of contrast, what the State was not required to prove—namely the value of the items stolen. Read in this context, these statements cannot reasonably be understood to improperly shift or misstate the burden of proof.

Bailey fails to establish prosecutorial misconduct.[10]

Affirm.

WE CONCUR:

_____

_____

_____

Spearman, C.J.

_____

Cox, J.

---

[10] Bailey also contends that trial counsel's failure to object to the prosecutor's statements at closing constituted ineffective assistance of counsel. As discussed previously, in order to prevail on an ineffective assistance of counsel claim, Bailey must establish deficient performance by his attorney and resulting prejudice. Strickland, 466 U.S. at 689. Because Bailey fails to demonstrate prosecutorial misconduct he cannot establish that trial counsel's failure to object on that basis was deficient performance.