COMMONWEALTH *vs.* JAMES M. LYDON.

Suffolk. May 7, 1992. - July 29, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Homicide. Firearms. Constitutional Law*, Self-incrimination. *Evidence*, State of mind, Consciousness of guilt. *Practice, Criminal*, Grand jury proceedings, Loss of evidence by prosecution.

At the trial of a first degree murder indictment the Commonwealth introduced sufficient evidence to warrant the jury's verdict of guilty, thus the defendant's motion for a required finding of not guilty was correctly denied. [311-313]

At the trial of an indictment for murder in the first degree, the admission in evidence of the defendant's refusal to allow police to swab his hands to test for evidence that he had recently fired a gun created a substantial risk of a miscarriage of justice, where the refusal amounted to self-accusation; thus the use of such evidence would violate the defendant's privilege against self-incrimination secured by art. 12 of the Massachusetts Declaration of Rights. [313-315]

A criminal defendant was not entitled to dismissal of the indictments against him by reason of the prosecutor's alleged failure to inform the grand jury of exculpatory evidence, where the evidence in question was not necessarily exculpatory of the defendant. [315-316]

At a murder trial, the judge properly denied the defendant's motion to dismiss the indictments or to preclude the Commonwealth from making reference to certain evidence that the Commonwealth lost, where the judge found that the Commonwealth was not grossly negligent and had not intentionally lost or suppressed the evidence and that the defendant would not be prejudiced by the loss of the evidence. [316-317]

On the appeal of a conviction of unlawful possession of a firearm, no issue was presented for review of the sufficiency of the evidence. [317-318]

At a criminal trial, no error appeared in the judge's instructions to the jury on the licensing element of a charge of unlawfully possessing a firearm. [318-319]

INDICTMENTS found and returned in the Superior Court Department on November 15, 1985.

The cases were tried before *Robert V. Mulkern*, J., and a motion for a new trial was heard by him.

*Wendy Sibbison* for the defendant.

*Vincent R. McDonough & Francis A. O'Meara*, Assistant District Attorneys, for the Commonwealth.

LYNCH, J. The defendant was convicted of murder in the first degree and of unlawful possession of a firearm. He filed postconviction motions for a new trial and for interviews of jurors and an amended motion based on ineffective assistance of counsel. A single justice of this court remanded the motions to the Superior Court for findings and hearing and ordered a stay of the appellate proceedings. After a hearing, a Superior Court judge made findings of fact and rulings of law and denied the defendant's amended motion. The defendant appealed. We reverse the conviction of murder in the first degree and remand this case to the Superior Court for a new trial. We affirm the conviction of unlawful possession of a firearm.

There was evidence from which the jury could have found the following pertinent facts: Shortly after 2 A.M. on August 22, 1985, Hubert James Crowe was shot seven times and died as a result. Residents of the area heard the gunshots. One witness saw the victim's body seconds after the gunshots, and also saw a person running away from the victim's body and getting into the front passenger side of an automobile which pulled up below her apartment window. She was unable to determine the color of the vehicle, but asserted that the vehicle reminded her of her father's "old convertible Buick." A police cruiser arrived at the scene. The police officer who had heard the gunshots testified that he saw a large red automobile with a light top, carrying two males, come out of Dorchester Street in the South Boston section of Boston, turn onto East Broadway and head up the hill. The officer drove into Dorchester Street, saw the victim's body, and turned around to pursue the red automobile. Eventually, the officer spotted a 1973 red and white Buick and, with the cruiser's blue lights on, gave chase. The automobile picked up speed and fled. When it was stopped, the defendant was in the

front passenger seat. Both the defendant and the driver of the automobile were placed under arrest. A search of the automobile revealed no incriminating evidence. Retracing the route of the chase, the officer found a gun which was later determined to be the murder weapon and other evidence, but the officer had not seen anything thrown from the vehicle while he was chasing it. The defendant was read his Miranda rights at his booking at approximately 2:40 A.M. At approximately 7 A.M., a criminalist arrived at the station, where the defendant was being held, to test for the presence of barium and antimony on the hands of both the defendant and the other occupant of the automobile. The defendant refused to take the test and stated he wanted to talk with his attorney.[1] Prior to trial, numerous pieces of evidence were lost. Two or three weeks before the shooting the defendant and the victim were in the "Powerhouse Pub" where they were both "regulars." After the victim, who was a dealer, sold cocaine to someone at the bar, the defendant said to the victim, "You better enjoy it now . . . You won't be for long." Both the defendant and the victim were seen at the pub on the night of the shooting.

1. *Required finding of not guilty.* At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which was denied. The defendant argues that the judge committed error as no rational trier of fact could conclude that the defendant either shot the victim or was a joint venturer in the shooting of the victim. We disagree. The defendant's arguments are in substance directed toward the weight and credibility of the evidence, "a matter wholly within the province of the jury." *Commonwealth* v. *Martino,* 412 Mass. 267, 272 (1992).

---

[1] The defendant had no right to refuse to take the test, which is nonintrusive and involves no danger, pain, or discomfort. A defendant who has been arrested, and who has received Miranda warnings, may be forced to submit to tests which produce real or physical evidence. See *Schmerber* v. *California,* 384 U.S. 757, 762-763, 766-772 (1966); *Commonwealth* v. *Appleby,* 358 Mass. 407, 413-414 (1970). See also *Commonwealth* v. *Paradise,* 405 Mass 141, 156 (1989).

The evidence is viewed in the light most favorable to the Commonwealth. *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). "In reviewing the judge's decision to deny the defendant's motion[ ] for a required finding of not guilty, we inquire whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a reasonable jury of each element of first degree murder beyond a reasonable doubt . . . A conviction may be properly based entirely on circumstantial evidence so long as that evidence establishes the defendant's guilt beyond a reasonable doubt." (Citation omitted.) *Commonwealth* v. *Martino, supra* at 271-272. "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding." *Commonwealth* v. *Brown,* 401 Mass. 745, 747 (1988). Only the evidence presented by the Commonwealth is considered when answering this question. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). "In cases in which the evidence is largely circumstantial, 'it is not essential that the inferences drawn should be the only necessary inferences . . . . It is enough that [the inferences] be reasonable and possible.' . . . 'To the extent that conflicting inferences are possible from the evidence, "it is for the jury to determine where the truth lies." ' " (Citations omitted.) *Commonwealth* v. *Martino, supra* at 272.

The Commonwealth introduced sufficient evidence of the defendant's guilt of murder in the first degree under these standards.[2] The Commonwealth presented evidence that the defendant and the victim were regulars at the Powerhouse Pub. Two or three weeks before the shooting, the defendant threatened the victim. Witnesses saw both the defendant and

---

[2]Under a theory of joint venture premeditated murder during which another person carried and used the gun, the Commonwealth must "establish beyond a reasonable doubt that the defendant knew [the other person] had a gun with him." *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988). No such evidence was introduced. Therefore, under this theory, insufficient evidence existed to convict the defendant and no retrial for murder based on this theory is possible. *Commonwealth* v. *Smith*, 412 Mass. 823 (1992).

the victim in the pub on the night of the victim's death. Seconds after the sound of gunfire, witnesses testified to seeing an automobile matching the description of the automobile in which the defendant was subsequently found and arrested, and which had been entrusted to him. One witness also saw a person enter the passenger side of such an automobile shortly after the sound of gunfire. When the defendant was apprehended, he was sitting on the front passenger side. Shortly after the shooting, an officer found and followed the automobile; when the officer activated his siren, the automobile fled, indicating consciousness of guilt, and did not stop until surrounded by police vehicles. The gun that killed the victim was found at a bridge along the chase route. A note found in a bag with the gun contained the name and telephone number of the business agent of the defendant's union.

The judge properly denied the defendant's motion for a required finding of not guilty.

2. *Refusal evidence.* The defendant argues that the judge erroneously allowed the Commonwealth to introduce evidence of the defendant's refusal to have his hands swabbed. We agree. The issue under the Massachusetts Constitution was not clearly raised at trial. Thus, we review to determine whether the error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Dias,* 405 Mass. 131, 137 (1989). *Commonwealth* v. *Oakes,* 407 Mass. 92, 94-95 (1990). In view of the circumstantial nature of the Commonwealth's case, we conclude that a substantial likelihood of a miscarriage of justice occurred on the murder conviction.

Article 12 of the Declaration of Rights of the Massachusetts Constitution provides in part that no person shall "be compelled" to accuse or to furnish evidence against himself. The Justices recently advised that a statute making evidence of a person's refusal to take a breathalyzer test admissible in a trial for operating under the influence would be unconstitutional. *Opinion of the Justices,* 412 Mass. 1201 (1992). The Justices' reasoning in that opinion applies here. "Although the privilege against self-incrimination under art. 12 is

broad, it protects only against the compulsion of communications or testimony and not against the production of real or physical evidence, such as fingerprints, photographs, lineups, blood samples, handwriting, and voice exemplars. *Commonwealth* v. *Brennan*, [386 Mass. 772,] 776, 780 [1982]. By contrast, testimonial evidence which reveals a person's knowledge or thoughts concerning some fact is protected. *Id.* at 778."[3] *Opinion of the Justices*, *supra* at 1208. "In the ordinary case a prosecutor would seek to introduce refusal evidence to show, and would argue if permitted, that a defendant's refusal is the equivalent of his statement, 'I have had so much to drink that I know or at least suspect that I am unable to pass the test.' . . . An involuntary statement to that effect by the defendant could not be used against him. At common law out-of-court conduct, which by intent or inference expresses an assertion, has been regarded as a statement and therefore hearsay if offered to prove the truth of the matter asserted. . . . It follows, therefore, that evidence of a person's thought process, if offered to show that the person had doubts about his ability to pass the test, would be testimonial." (Citations omitted.) *Id.* at 1209.

In this case, the jury were instructed that the evidence of refusal was limited to evidence of "consciousness of guilt." If the fact that the defendant refused to allow the hand-swabbing demonstrates consciousness of guilt, such refusal rises to the level of a self-accusation. It can be consciousness of guilt only if offered to show that the defendant had doubts about his ability to pass the test. The evidence is not materially different from evidence of refusal to take a breathalyzer test. In regard to such evidence we recently said, "Some courts have reasoned that refusal evidence may be used because their analogous statutes do not compel refusal, but rather seek only to encourage taking the test. Such statutes do, however, compel the accused to choose between taking the test and incurring a penalty. There is compulsion, therefore,

---

[3]Thus the test for the presence of gunpowder residue could have been performed without the defendant's consent.

on the accused to choose between two alternatives, both of which are capable of producing evidence against him. The proposed statute, therefore, uses the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test. The accused is thus placed in a 'Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial. Although some have said that the act of refusal is not a self-accusation, *South Dakota v. Neville*, 459 U.S. 553, 561 n.11, 562 n.13 (1983), in our view it is simply wrong to conclude that refusal evidence used in the manner proposed is not evidence furnished by the accused. Therefore, such refusal evidence is both compelled and furnishes evidence against oneself." *Opinion of the Justices, supra* at 1211.

The refusal evidence should not have been admitted since its use violated the defendant's privilege against self-incrimination secured by art. 12 of the Massachusetts Declaration of Rights.

3. *Other issues.*

a. The defendant argues that the prosecutor failed to inform the grand jury of known exculpatory evidence that would have undermined the credibility of the prosecution's key witness. He moved for dismissal, which was denied.

"A prosecutor is not required to present all possibly exculpatory evidence to a grand jury. But a prosecutor cannot be permitted to subvert the integrity of grand jury proceedings by 'selling' the grand jury 'shoddy merchandise' without appropriate disclaimers. . . . [If] evidence known to the prosecutor would greatly undermine the credibility of an important witness, the prosecutor must at least alert the grand jury to the existence of that evidence." (Citations omitted.) *Commonwealth v. Connor*, 392 Mass. 838, 854 (1984). *Commonwealth v. Daye*, 411 Mass. 719, 737 (1992).

The evidence on which the defendant focuses is hearsay evidence that a blue automobile was observed at the scene of the murder. Such evidence would not "greatly undermine the credibility of an important witness" because, as the judge

ruled, the evidence does not necessarily exculpate the defendant.

When the judge denied the defendant's motion to dismiss, he stated:

> "First of all, I have concluded that the prosecutor violated no duty to present exculpatory evidence in the circumstances of this case. The Commonwealth has complied with the requirements of Commonwealth versus McCarthy, with respect to the defendant and the circumstances showing probable cause to arrest [the] defendant in this case . . . There has been no unfair or misleading presentation of evidence or witnesses to the Grand Jury.

> "The fact that there was an omission of totem pole hearsay, uncorroborated totem pole hearsay, overheard by a certain witness who testified before the Grand Jury, this does not in any way, in my opinion, distort the testimony in fact given before the Grand Jury.

> "Furthermore, there has been no evidence of any willful deception by the Commonwealth in the presentation of the evidence to the Grand Jury. In fact, on the issue of so-called exculpatory evidence kept from the Grand Jury, that evidence, as I see it, is subject to two interpretations. It doesn't necessarily exculpate [the] defendant. In fact, it could very well be construed to indicate there were some accomplices, if anything. So, it's not in and of itself worthy of showing that the[ ] defendant[ ] could not have committed these particular offenses, or at least there was not probable cause to believe that [he] did so."

We agree. The judge did not err in denying the motion to dismiss.

b. We briefly address the only other issue which may arise on retrial. The defendant argues that the Commonwealth's loss of potentially exculpatory evidence violated his due pro-

cess rights under art. 12 of our Declaration of Rights.[4] The
defendant moved to dismiss the indictments, or in the alter-
native, to preclude the Commonwealth at trial from making
reference to the missing evidence.

A judge "must consider and balance the degree of culpa-
bility of the government, the materiality of the evidence, and
the potential prejudice to the defendant in order to protect
the defendant's constitutional due process right to a fair trial.
See *Commonwealth* v. *Olszewski,* 401 Mass. 749, 754-755
(1988). If the loss of the evidence threatened the defendant's
right to a fair trial, the judge has discretion concerning the
manner in which to protect the defendant's rights." *Com-
monwealth* v. *Henderson,* 411 Mass. 309, 310 (1991).

The judge denied the defendant's motion, finding that the
Commonwealth was not grossly negligent, had not intention-
ally suppressed or lost the evidence, and further that the de-
fense would not be prejudiced by the loss of the evidence.
"We will not disturb these findings of fact in the absence of
clear error." *Commonwealth* v. *Otsuki,* 411 Mass. 218, 230
(1991). The judge did not err.[5]

4. *Unlawful possession of a firearm.* The defendant argues
in a footnote that the evidence was insufficient to convict him
of unlawful possession of a firearm. Arguments relegated to a

---

[4]The Commonwealth lost the following evidence: (1) the Buick in which
the defendant was arrested; (2) a slip of paper alleged to have been found
in an ammunition bag found with the gun; and (3) a fingerprint lift taken
from the murder weapon (the only fingerprint lifted from the murder
weapon).

[5]The judge noted that the defense tactic of waiting over a year to deter-
mine whether the automobile "smoked" was not sound because the condi-
tion of an internal combustion engine is not constant; that no defense effort
was made to require the vehicle to be maintained in police custody; and
that the defendant could present evidence of the Commonwealth's failure
to test and use witness testimony to impeach evidence that the automobile
smoked. With respect to the note, the judge found that the note had proba-
tive value by reason of its content; that the defendant did not make a re-
quest for fingerprint testing or handwriting analysis, nor did he ask that a
picture be taken of the note. With respect to the fingerprint lift, the judge
found that photographs of the lift were available, and that the print was
not that of the defendant, the other occupant of the automobile, nor of any
officer who subsequently handled the murder weapon.

footnote do not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Accordingly, this argument is deemed to be waived. See *Rate Setting Comm'n* v. *Faulkner Hosp.*, 411 Mass. 701, 707 (1992); *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 581 n.7 (1986). We add that we have reviewed the issue and conclude that the evidence was sufficient to warrant the conviction. The gun was proven to be the murder weapon; it was both at the scene of the murder, and shortly thereafter found along the route taken by the defendant's motor vehicle some distance from the murder scene. From these facts the jury could infer that the gun was in the defendant's motor vehicle.

The defendant also argues that the court erroneously directed a verdict of guilty on the licensing element of unlawful carrying of a gun. We disagree. The defendant offered no evidence that he possessed a valid license. While "[a] verdict may not be directed against a defendant in a criminal prosecution, and the trier of fact cannot be compelled to find against the defendant as to any 'element of the crime' . . . the charge in the present case did not direct a verdict against the defendant . . . In the absence of any evidence on the issue of licensing, it was appropriate to withdraw that issue from consideration by the jury." (Citation omitted.) *Commonwealth* v. *Jones*, 372 Mass. 403, 410 (1977).

The judge instructed the jury as follows:

"There are two indictments, ladies and gentlemen, and as you will note, they have different elements.

"The first one is a statutory offense. It's framed under a Massachusetts statute and it alleges that on the date in question, August 22, 1985, [the defendant] did unlawfully, knowingly carry under his control in a vehicle a certain firearm, to wit: a revolver, from which a bullet could be discharged. The length of the barrel being less than sixteen inches, without having a license so to do.

"With respect to the licensing, I conferred with counsel before commencing these instructions, and that's not a matter that you have to concern yourself about, the question of licensing."

"It might have been better simply to state that in the absence of evidence the jury should not consider the question whether the defendant had a license to carry a gun." *Commonwealth* v. *Jones, supra.* On the instructions, taken as a whole, the judge did not err.

5. *Conclusion.* With respect to unlawful possession of a firearm we affirm the judgment. We reverse the judgment with respect to murder in the first degree, set aside the verdict, and remand the case for a new trial.

*So ordered.*