## COMMONWEALTH vs. ELY IGLESIAS.

Hampden. January 6, 1998. - February 2, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights, Jury, Assistance of counsel. *Waiver. Practice, Criminal,* Voluntariness of statement, Assistance of counsel, Jury and jurors, Capital case. *Jury and Jurors.*

In a murder case, the judge properly concluded, on the evidence presented at a hearing on a motion to suppress the defendant's postarrest statement to police, that Miranda warnings given in English did not render the native Spanish-speaking defendant's waiver of Miranda rights invalid, where the evidence demonstrated that the defendant's waiver was knowing, intelligent, and voluntary. [577-578]

A criminal defendant did not demonstrate that his trial counsel's failure to challenge the jury venire, failure to file a pretrial motion to suppress the defendant's postarrest statement, and presentation of inconsistent defenses constituted ineffective assistance of counsel, under the circumstances. [578-580]

No reason appeared on the record of a murder trial to warrant this court to exercise its power under G. L. c. 278, § 33E, to reduce the verdict or to grant a new trial. [580-581]

INDICTMENT found and returned in the Superior Court Department on March 30, 1994.

The case was tried before *Daniel A. Ford,* J.

*Greg T. Schubert* for the defendant.

*Lori K. Odierna,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury convicted the defendant, Ely Iglesias, of murder in the first degree by reason of deliberate premeditation in connection with the shooting of the victim, Jose Garcia Dominquez. Represented by new counsel on appeal, the defendant claims that his postarrest statement to the police should have been suppressed because the Miranda warnings, given to him in English without the aid of an interpreter, were insufficient to protect his constitutional rights. The defendant also argues that

he received ineffective assistance of counsel because his trial counsel (1) failed to challenge the jury venire, which he alleges contained no Hispanic persons, resulting in a denial of his right to a trial jury drawn from a fair cross section of the community; (2) did not file a pretrial motion to suppress his statement to the police on the basis that the Miranda warnings were given in English without an interpreter; and (3) presented inconsistent defenses by introducing evidence during the trial that the shooting may have been drug related, but ignoring that evidence during closing argument and focusing instead on convincing the jury that the shooting was not premeditated. We conclude that these issues do not provide a basis for a new trial, nor is there any reason to exercise our authority pursuant to G. L. c. 278, § 33E. Accordingly, we affirm the defendant's conviction.

The jury were warranted in finding the following facts. On March 2, 1994, the victim died at a hospital of a single gunshot wound to the back of his head. A single bullet casing was found on the floor of the front passenger side of the car, a burgundy Honda Accord, in which the victim had been brought to the hospital. Information obtained from the driver of the car, Fausto Velez, and from a friend of the defendant, Ramon Soto, gave the police probable cause to arrest the defendant at approximately 4:30 A.M. on March 3, 1994. As the police approached the defendant at the time of arrest with their guns drawn, after first identifying themselves as police officers, the defendant stated, in English, "You got the right guy." After being taken into custody, the defendant indicated that he wanted to talk to someone about the homicide. The defendant was given his Miranda rights, signed a waiver of the rights, and gave a statement consisting of the following information.

The defendant came to the United States from Puerto Rico in November, 1993. The defendant met the victim approximately one month later, and immediately disliked the victim because of his "attitude." During the three weeks prior to the shooting, the defendant grew angry with the victim because he "started to talk shit about [the defendant's] friend."

The defendant first started thinking about shooting the victim on Tuesday, March 1, 1994. On that same day, the defendant and a friend, James Rosario, reserved two airline tickets to Puerto Rico on a plane scheduled to leave from John F. Kennedy Airport in New York at 5:45 P.M. on Thursday, March 3, 1994. On Wednesday, March 2, 1994, the defendant and Rosario paid

for and picked up their airline tickets and then went to retrieve the defendant's gun, a .22 caliber pistol, which the defendant had loaded earlier.

At approximately 3 P.M. on March 2, 1994, the defendant and Rosario were on Franklin Street, near High Street in Holyoke, when Rosario asked the defendant what he was going to do with the gun. The defendant said that he did not know, but that he had a "bad feeling." At some point, the defendant told Rosario that he was going to shoot the victim.

While the defendant and Rosario were standing on the street, Velez drove up in his burgundy Honda Accord with the victim in the front passenger seat. The defendant asked Velez to give them a ride to the "Flats," another section of Holyoke. The only reason they wanted to go to the Flats was to be in the car with the victim. The defendant and Rosario got into the back seat, with the defendant seated behind the victim.

During the drive, the victim "started to talk shit again about [the defendant's] friend." The defendant "got mad" and "confused," and "kept thinking about shooting [the victim]." At some point during the ride, the defendant "took the gun out of the front of [his] pants and slowly put it on [his] right side by [his] leg." When they reached the Flats, Rosario got out and went into an apartment building for a short time. When he returned to the car, the defendant "raised the gun up and put it right to [the victim's] neck and pulled the trigger." The defendant and Rosario got out of the car and walked back to Franklin Street.

Testimony at trial corroborated the defendant's statement. Two witnesses identified the defendant as one of four men in a Honda Accord driven by Velez on the afternoon of March 2, 1994, with the defendant in the rear passenger seat. The defendant's fingerprint was also recovered from the outside metal molding of the rear passenger side door of the Honda Accord. Ramon Soto testified that Rosario and the defendant came to his apartment at sundown on March 2, 1994, and that the defendant had a gun. The two were nervous, and Soto persuaded them to leave the gun with him. Soto called the police at approximately 4 A.M. the next morning, and told the police where to find Rosario and the defendant. The police also recovered the handgun from Soto. Police experts later matched this handgun with the casing found in the Honda and the bullet fragments from the victim's brain.

1. The defendant argues that the Miranda warnings, given to him in English without an interpreter, were inadequate to protect his constitutional rights because he is a native Spanish speaker and requested an interpreter both during voir dire and during trial. Consequently, according to the defendant, his postarrest statement to the police should have been suppressed.

The fact that Miranda warnings are given in a language other than the native language of the defendant does not render a subsequent waiver of Miranda rights invalid if it is otherwise shown that a valid Miranda waiver has occurred, that is, a waiver "made knowingly, intelligently, and in all respects, voluntarily." *Commonwealth* v. *Selby*, 420 Mass. 656, 660 (1995). The trial judge properly ruled, after conducting an evidentiary hearing, that the defendant both understood and voluntarily waived his Miranda rights. With respect to the language issue, the evidence found credible by the judge disclosed that all conversations held between the defendant and the police were in English, and that there was no evidence of any difficulties in communication. At no time did the defendant ask the police officers to explain any English word to him. The defendant was given a chance to read the Miranda waiver card before signing it, and he appeared to do so. The defendant gave his statement in English, and read a portion of that statement aloud to the police officers. When asked how he was able to speak English so well, having only been in the United States for a short time, the defendant replied that he had learned English while in school in Puerto Rico.

The fact that an interpreter was provided for the defendant, at the defendant's request, during the evidentiary hearing on the validity of his statement, and during trial, does not establish that the defendant did not understand English sufficiently for a valid Miranda waiver. The defendant's trial counsel asked for an interpreter as a precaution since the defendant's native language was Spanish. However, even the defendant's trial counsel admitted that the defendant spoke English, stating, "I never had any difficulty communicating with him."

Other factors examined and credited by the judge at the evidentiary hearing also supported the ruling that the defendant's statement was voluntarily made. The defendant was treated well by the police, having been offered food, drink, and the chance to use the telephone. No pressure or coercion was placed on the defendant, and no deal was offered in exchange for his state-

ment. Only two police officers were in the room with the defendant while he was giving his statement, and both testified that the defendant was calm, seemed intelligent, was aware of his surroundings and the fact that he was a suspect in a murder case, and did not appear to be under the influence of drugs or alcohol. Although the interview took place in the early morning, beginning at approximately 5 A.M., the defendant did not appear to be tired. The interview lasted approximately two hours. Having properly considered the relevant factors under the "totality of the circumstances" test, *Commonwealth* v. *Selby, supra* at 663, the judge properly concluded that the defendant's statement was made voluntarily after a valid waiver of his Miranda rights.[1]

2. We next consider the defendant's claims of ineffective assistance of counsel. Because we are reviewing a conviction of murder in the first degree, we examine the defendant's assertions under G. L. c. 278, § 33E, and inquire "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). We conclude that there was no error.

a. The defendant first argues that his trial counsel should have challenged the jury venire on the ground that it contained no Hispanic jurors and, as a result, violated his right to trial by a jury drawn from a fair cross section of the community.[2] While it is true that trial counsel failed to preserve this issue by filing a written pretrial motion to dismiss the jury venire, pursuant to

---

[1]It is not clear whether the defendant is also challenging the admissibility of his statement, "You got the right guy," uttered when the police were in the process of arresting him. Any challenge to this statement would fail as the judge properly found that the statement was made spontaneously and voluntarily by the defendant, and not in response to any questioning by police. See *Commonwealth* v. *O'Brien*, 377 Mass. 772, 776 (1979). The weight to be given to the statement was for the jury.

[2]The defendant also argues that his right to equal protection of the law was violated by his trial counsel's failure to challenge the jury venire. However, an equal protection challenge to jury selection applies to the composition of a grand jury. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96 (1980). In any event, under art. 12 of the Declaration of Rights to the Massachusetts Constitution, there is no distinction between the equal protection analysis for grand juries and the analysis for trial juries under the Sixth Amendment to the United States Constitution. *Commonwealth* v. *Fryar*, 425 Mass. 237, 240-241, cert. denied, 118 S. Ct. 363 (1997).

Mass. R. Crim. P. 13 (a) (1), (a) (3), and (c), 378 Mass. 871 (1979), see *Commonwealth* v. *Pope*, 392 Mass. 493, 498 (1984) ("challenges to the composition of a . . . petit jury must be raised only by a pretrial motion to dismiss . . . the venire"), this failure does not demonstrate error in the absence of a showing that such a motion would have been successful. Other than a bare assertion that there were no Hispanics on the jury venire,[3] the defendant presents no evidence to support the alleged underrepresentation or to show that any "underrepresentation [was] due to systematic exclusion of the group in the jury selection process." *Commonwealth* v. *Tolentino*, 422 Mass. 515, 519 (1996), quoting *Commonwealth* v. *Bastarache*, 382 Mass. 86, 97 (1980).[4] In fact, we have recently held that the system for selecting trial jurors in Hampden County protects against discrimination in the selection of jurors. *Commonwealth* v. *Fryar*, 425 Mass. 237, 243-244, cert. denied, 118 S. Ct. 636 (1997). The defendant has not shown that the jury selection process was any different when he was indicted and tried in 1994.

b. The defendant next argues that his trial counsel's failure to file a pretrial motion to suppress his statement, on the basis that the Miranda warnings were given to him in English without an interpreter, was ineffective assistance. The defendant's trial counsel requested a voir dire on the issue whether the defendant's statement was given voluntarily. This is a proper method of challenging the admissibility of a defendant's statement. See *Commonwealth* v. *Hunter*, 416 Mass. 831, 834

[3]This assertion is presumably based on the observation by the defendant's trial counsel during voir dire that he "didn't notice any Spanish" on the jury list, and prior to empanelment of the trial jury that "of the people who have been selected to be here, I only saw that one Spanish [who had been excused] and no one else. In Hampden County . . . there's a lot more than one out of sixty or seventy." However, we have previously observed that neither visual inspection nor surname analysis are reliable indications of ethnic identity. *Commonwealth* v. *Fryar*, *supra* at 242.

[4]The defendant has attached to his appellate brief a document entitled, Results of Racial & Ethnic Survey, for the Hampden Judicial District, for the period of June 3, 1996, through February 1, 1997, which, according to the defendant, shows that Hispanics are underrepresented on juries in Hampden County. Aside from the fact that this document has not been made part of the record and cannot be considered on appeal pursuant to Mass. R. A. P. 8 (a), as amended, 378 Mass. 932 (1979), even considering the document as concerning an issue under G. L. c. 278, § 33E, the statistics presented therein are not applicable to the time period of the defendant's trial, that is, December of 1994, and they do not warrant the conclusion that the defendant attempts to draw from them.

(1994); *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511 (1989). As has been discussed, an evidentiary hearing was held, and the trial judge properly found that the defendant's statement was made voluntarily after a valid waiver of his Miranda rights. The judge also found that the defendant was able to communicate in English, both orally and in writing. There is no reason to believe that the judge's decision would have been any different had it been made in response to a pretrial motion to suppress, rather than the evidentiary hearing held during the trial.

c. Finally, the defendant claims that his counsel's trial tactics were unreasonable and denied him effective assistance. Specifically, the defendant argues that there was no justification to support the approach, initially chosen by his trial counsel, to elicit testimony that the shooting may have been drug related, and that this line of questioning was inconsistent with trial counsel's closing argument, intended to persuade the jury that the shooting was spontaneous. We give due deference to defense counsel's strategic decisions and conclude that his approach was not "manifestly unreasonable." See *Breese* v. *Commonwealth*, 415 Mass. 249, 251 (1993).

The defendant's trial counsel may have introduced the evidence of drug dealing to suggest to the jury either that Fausto Velez, as an alleged drug dealer, may have shot the victim, and that the defendant was merely covering for him, or that the defendant was ordered to shoot the victim by Velez. This was a reasonable strategy, especially given the overwhelming evidence against the defendant. After learning that Velez would invoke his privilege against self-incrimination under the Fifth Amendment to the United States Constitution if forced to testify, the defendant's trial counsel may have decided that the theory that the shooting was drug related was too weak to justify its being pressed any further. At that point, the defendant's trial counsel may have concluded that the only reasonable approach left was to convince the jury that the shooting was not premeditated because the defendant had stated that "[i]t was on the spur of the moment." In any event, defense counsel's strategy could not have created any likelihood of a miscarriage of justice because the evidence overwhelmingly supported the jury's verdict that the defendant had acted with deliberate premeditation.

3. We have reviewed the record as required by G. L. c. 278,

§ 33E, and conclude that there is no reason to order a new trial or to direct the entry of a lesser degree of guilt.

*Judgment affirmed.*