## COMMONWEALTH vs. WAYNE R. COONAN.

Worcester. November 3, 1998. - February 8, 1999.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Grand Jury. Evidence,* Grand jury proceedings, Consciousness of guilt. *Probable Cause. Practice, Criminal,* Assistance of counsel, Capital case. *Constitutional Law,* Assistance of counsel. *Homicide.*

In a murder case, the evidence presented to the grand jury was more than sufficient to warrant a finding of probable cause to believe the defendant was the person who committed the murder. [825-826]

At the trial of indictments for murder and rape, defense counsel's tactical decision to cross-examine a Commonwealth witness in a manner suggesting that the witness had fabricated an admission of the defendant in order to divert suspicion away from himself was not manifestly unreasonable. [826-827]

At the trial of indictments for murder in the first degree and rape, the Commonwealth introduced sufficient evidence from which the jury could have inferred beyond a reasonable doubt that the defendant was the person who had deliberately and with premeditation, and with extreme atrocity or cruelty, committed the murder of the victim while in the furtherance of rape. [827-831]

Upon review of the record of a trial of indictments for murder in the first degree, this court concluded that there was no reason to exercise its authority under G. L. c. 278, § 33E. [831]

INDICTMENT found and returned in the Superior Court Department on November 14, 1995.

A pretrial motion to dismiss the indictment was heard by *Herbert F. Travers, Jr.,* J., and the case was tried before *Daniel F. Toomey,* J.

*Jeffrey L. Baler* for the defendant.

*Christopher P. Hodgens,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A Superior Court jury found the defendant guilty of murder in the first degree based on deliberate premeditation, extreme atrocity or cruelty, and felony-murder. On appeal, the defendant asserts the following: (1) the judge erred in denying

his motion to dismiss the indictment because insufficient evidence was presented to the grand jury; (2) defense counsel's cross-examination of a witness constituted ineffective assistance of counsel; (3) the evidence was insufficient to support the jury's verdict of murder because it failed to establish that the defendant committed the crime; and (4) even if minimally sufficient, the evidence is such that we should exercise our supervisory powers, pursuant to G. L. c. 278, § 33E, and grant him a new trial or reduce his verdict to murder in the second degree or manslaughter. We conclude that there was no reversible error and decline to exercise our power under G. L. c. 278, § 33E. We now affirm.

We summarize the evidence in the light most favorable to the Commonwealth, reserving certain details for the discussion of issues raised by the defendant on appeal. See *Commonwealth* v. *Burnett*, 417 Mass. 740, 741 (1994); *Commonwealth* v. *Cordle*, 404 Mass. 733, 734 (1989), *S.C.*, 412 Mass. 172 (1992). On October 3, 1995, at about 8:30 P.M., Jose Rivera arrived at the defendant's apartment with the victim. The three smoked crack cocaine and drank alcoholic beverages. Rivera engaged in consensual oral sex with the victim, and left shortly thereafter. A second man, Stephen Langille, arrived at the apartment at approximately 12:30 A.M. Langille, the defendant, and the victim smoked crack cocaine and drank alcoholic beverages. Langille also had consensual oral sex with the victim. At about 2:30 A.M. the victim went to sleep on the defendant's bed. Langille left the apartment at approximately 3:30 A.M.

On October 4, 1995, at approximately 7:50 A.M., the defendant, who had been in the apartment since before 8:30 P.M. the previous evening, called the police from a public telephone claiming that he had just found a dead woman in his apartment. Shortly thereafter, the police discovered the victim's naked body face down on the defendant's bed. Her wrists were bound, and her mouth and nose were covered, with duct tape.

An autopsy revealed the victim suffered severe trauma to the face, head, left eye, and brain. There was also trauma to her vagina, which was coated with a silicone or petroleum lubricant. "[L]inear streaks of fecal material" were found near the anus and vagina, suggesting "something cylindrical had been inside the anus and come out and as it came out it wiped off on either side of the buttocks." "There was fecal material in the vagina" consistent with penetration of the victim's anus and vagina

while she was alive. Large flakes of human skin were found over the surface of the victim's body. The victim died as a result of manual strangulation.

1. *Insufficiency of evidence presented to the grand jury.* The defendant claims the motion judge erred in denying his motion to dismiss the indictment. Specifically, he maintains that the evidence submitted to the grand jury showed only that he was present at the time of the murder, rather than providing probable cause to believe that he was the person who committed the rape and the murder.

Generally a court will not inquire into the competency or sufficiency of the evidence before the grand jury. *Commonwealth v. McCarthy*, 385 Mass. 160, 161-162 (1982). In that case we departed from that general rule and "held that where a grand jury receives no evidence of criminality on the part of the accused, the indictment must be dismissed. . . . '[A]t the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him.' " *Commonwealth v. Angiulo*, 415 Mass. 502, 510 (1993), quoting *Commonwealth v. McCarthy*, *supra* at 163. Probable cause is based on "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed . . . an offense." *Commonwealth v. O'Dell*, 392 Mass. 445, 450 (1984), quoting *Commonwealth v. Stevens*, 362 Mass. 24, 26 (1972).

The grand jury heard sufficient evidence to warrant a finding of probable cause. The following evidence was before the grand jury: The defendant told the victim that she was welcome to stay at his apartment for the night; after the victim was sleeping, the defendant told Langille that he did not want to receive oral sex, but wanted to "screw" the victim and said that he had plenty of condoms; the last person to see the victim alive besides the murderer was Langille, who left the apartment at approximately 3:30 A.M.; Langille told the police that a coworker had informed him that the previous week the defendant "was being weird, talking about wanting to kill someone"[1]; the defendant was in the apartment when the victim was murdered;

---

[1]The defendant suggests that this statement was improperly presented to the grand jury on the basis that it was highly prejudicial, lacked substantive value, and did not indicate that he wanted to kill the victim. He relies on *Commonwealth v. Benoit*, 389 Mass. 411, 422 (1983), to support his argument. In *Benoit*, the Commonwealth introduced a statement made by the defendant five

the defendant admitted the duct tape that was used to bind and gag the victim was his; the defendant admitted that he suffered from a severe skin disorder; and the defendant delayed calling the police for nearly three hours.

Furthermore, an expert witness testified the autopsy revealed that the victim was badly beaten and suffered severe trauma to the vagina and anus, symptoms consistent with rape, before dying as a result of manual strangulation. He also testified that skin fragments found on the victim's body indicated that the victim was in physical contact with someone who had a severe skin disorder.

Accordingly, there was a more than sufficient basis for the grand jury to have indicted the defendant. See *Commonwealth* v. *Angiulo*, *supra* at 510-512; *Commonwealth* v. *O'Dell*, *supra* at 450-453; *Commonwealth* v. *McCarthy*, *supra* at 163.

2. *Allegations of ineffective assistance of counsel.* The defendant argues that he received ineffective assistance of counsel, in violation of his constitutional right under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Specifically, the defendant contends that trial counsel's cross-examination of a witness regarding the defendant's prior statement that, "If you bring somebody back to my house I'll have to kill them," resulted in the introduction of highly prejudicial and damaging testimony, was likely to have unfairly influenced the jury, and thus denied him effective assistance of counsel.

Because the defendant has been convicted of murder, we review his claims of ineffective assistance of counsel to determine whether there exists a substantial likelihood of a miscarriage of justice, as required under G. L. c. 278, § 33E, which is "more favorable to a defendant than is the constitu-

---

days before a murder, where he stated, "Now I'm going to have to kill somebody." We stated "[a] general statement of this nature, without more, is so lacking in probative value and so tainted with the risk of undue prejudice as to require exclusion." *Id.* However, unlike *Benoit*, in the instant case this statement was never introduced at trial. The fact that some evidence presented to the grand jury was hearsay has no effect on our determination, where the integrity of the grand jury proceedings was not impaired. See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 9 (1995) ("An indictment may be based solely on evidence of out-of-court statements"); *Commonwealth* v. *Gibson*, 368 Mass. 518, 522-525 (1975), and cases cited; Mass. R. Crim. P. 4 (c), 378 Mass. 849 (1979). See also *Commonwealth* v. *McGahee*, 393 Mass. 743, 746-747 (1985).

tional standard for determining ineffective assistance of counsel." *Commonwealth* v. *Hung Tan Vo*, 427 Mass. 464, 469 (1998), citing *Commonwealth* v. *Mello*, 420 Mass. 375, 393 (1995), and *Commonwealth* v. *Plant*, 417 Mass. 704, 715 (1994). We therefore consider whether an error in the course of the trial created a substantial likelihood of a miscarriage of justice, and, if so, a new trial is warranted unless we are substantially confident that, if the error had not been made, the jury verdict would have been the same. *Commonwealth* v. *Ruddock, ante* 288, 292 n.3 (1998). "An attorney's tactical decision amounts to ineffective assistance of counsel only if it was manifestly unreasonable when made." *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998), citing *Commonwealth* v. *Roberts*, 423 Mass. 17, 20 (1996), and *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

Defense counsel's cross-examination of Rivera, who had also been a suspect, suggested that he had fabricated his testimony to divert suspicion away from himself.[2] Thus, the defendant's trial counsel sought to persuade the jury that Rivera's lack of credibility and the presence of his blood in the apartment created a reasonable doubt as to the defendant's guilt. We give due deference to defense counsel's strategic decisions and conclude that his strategy was not manifestly unreasonable. See *Commonwealth* v. *Iglesias*, 426 Mass. 574, 580 (1998); *Breese* v. *Commonwealth*, 415 Mass. 249, 251 (1993).

It was a reasonable defense tactic to attempt to discredit Rivera and point to him as a possible suspect. That Rivera told the police that the defendant had made incriminating statements to him at a time when he did not know the defendant was strong evidence attacking Rivera's credibility and casting suspicion on him. It is difficult to imagine how defense counsel could have made use of this evidence without the jury's learning what the purported incriminating statements were.

3. *Sufficiency of the evidence.* At the close of the Com-

---

[2]Rivera became a suspect in the victim's murder investigation in August of 1996, after the police discovered traces of his blood in the defendant's apartment. During the subsequent custodial interrogation, Rivera alleged that in March of 1995, the defendant stated, "If you bring someone back to my house I'll have to kill them." On cross-examination, the defendant's trial counsel inquired about Rivera's prior statements to police. Defense counsel then elicited testimony from Rivera that he did not even know the defendant in March of 1995 because he had not met him until September of 1995, just two weeks prior to the murder.

monwealth's case, the defendant moved for a required finding of not guilty, which was denied. The defendant does not challenge the sufficiency of the evidence to establish murder in the first degree on the basis of deliberate premeditation, extreme atrocity or cruelty, or the application of the felony-murder rule. Rather, he maintains that the evidence merely showed that he was present at the scene of the crime and thus was insufficient as a matter of law to establish that he was the murderer.[3] In considering the defendant's arguments we note "the weight and credibility of the evidence [is] 'a matter wholly within the province of the jury.' " *Commonwealth* v. *Lydon*, 413 Mass. 309, 311 (1992), quoting *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992).[4]

In review of a judge's denial of a defendant's motion for a required finding of not guilty, we inquire whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of the essential elements of the crime beyond a reasonable doubt. See *Commonwealth* v. *Woodward*, 427 Mass. 659, 682 (1998); *Commonwealth* v. *Martino, supra* at 271-272; *Commonwealth* v. *Cordle*, 404 Mass. 733, 738-739 (1989), *S.C.*, 412 Mass. 172 (1992). "A conviction may be properly based entirely on circumstantial evidence so long as that evidence establishes the defendant's guilt beyond a reasonable doubt." *Commonwealth* v. *Martino, supra* at 272, citing *Commonwealth* v. *Nardone*, 406 Mass. 123, 129 (1989), and *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 54 (1975). "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding." *Commonwealth* v. *Lydon, supra* at 312, quoting *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988). "In cases in which the evidence° is largely

---

[3]Specifically, the defendant contends that the evidence was insufficient because it was based solely on surmise and conjecture. He relies on *Commonwealth* v. *Mazza*, 399 Mass. 395, 399 (1987), and *Commonwealth* v. *Salemme*, 395 Mass. 594, 599-600 (1985), to support his position.

[4]The Commonwealth does not have the burden of proving that no one else could have committed the murder. See *Commonwealth* v. *Anderson*, 396 Mass. 306, 311-312 (1985); *Commonwealth* v. *Casale*, 381 Mass. 167, 175-176 (1980). Moreover, the Commonwealth does not have the burden of proving that only the defendant could have committed the crime; however, that someone else may have committed the crime only goes to the weight of the evidence. *Commonwealth* v. *Lussier*, 364 Mass. 414, 421 (1973), quoting *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968).

circumstantial, 'it is not essential that the inferences drawn should be the only necessary inferences. . . . It is enough that [the inferences] be reasonable and possible.' . . . 'To the extent that conflicting inferences are possible from the evidence, "it is for the jury to determine where the truth lies." ' " (Citations omitted.) *Commonwealth* v. *Lydon, supra,* quoting *Commonwealth* v. *Martino, supra* at 272.

The Commonwealth presented evidence from which the jury could have inferred that the defendant was alone with the victim between 3:30 A.M. and 5 A.M., the approximate time of the murder. The fact that the defendant had the opportunity to commit the murder and was the last person to see the victim alive would not be sufficient to overcome a motion for a directed verdict.[5] However, evidence showing that the victim and the defendant were together at the time of the murder, along with other incriminating evidence, is sufficient to sustain a jury verdict. See *Commonwealth* v. *Cordle, supra* at 739 (presence at scene of crime at about time of murders, in addition to evidence of ill will and consciousness of guilt, was sufficient to submit to jury); *Commonwealth* v. *Anderson,* 396 Mass. 306, 311-313 (1985) (evidence that defendant was alone with victim at about time of murder, along with evidence of consciousness of guilt, was sufficient to sustain verdict); *Commonwealth* v. *Rojas,* 388 Mass. 626, 629-630 (1983) (evidence that defendant was alone with victim and evidence demonstrating consciousness of guilt was sufficient for jury to find beyond reasonable doubt that defendant "was the killer").

The Commonwealth introduced evidence that, in addition to being alone with the victim shortly before the murder, the defendant had both the motive (sexual interest in victim)[6] and an instrument used in the commission of the crime (duct tape).[7]

---

[5]See *Commonwealth* v. *Cordle,* 404 Mass. 733, 742-743 (1989), *S.C.,* 412 Mass. 172 (1992) (mere presence at scene of crime without more is not sufficient for prima facie evidence); *Commonwealth* v. *Anderson,* 396 Mass. 306, 311-312 (1985) (Commonwealth must prove more than defendant was last person to see victim alive); *Commonwealth* v. *Rojas,* 388 Mass. 626, 630 (1983) (same).

[6]Both Rivera and Langille testified that the defendant appeared sexually attracted to the victim. Langille testified that after the victim went to sleep, the defendant told him that he wanted to "screw" and "fuck her" rather than receive oral sex from her. When Langille asked the defendant whether he needed any condoms, the defendant responded that he had plenty.

[7]See *Commonwealth* v. *James,* 424 Mass. 770, 780 n.18 (1997) (defendant's

Moreover, the defendant's behavior after the murder, including a three-hour delay in reporting the victim's death to police,[8] as well as the destruction of certain evidence,[9] demonstrated a consciousness of guilt. "In drawing inferences, the jury are permitted to consider actions and statements of the defendant that tend to show consciousness of guilt." *Commonwealth* v. *Anderson, supra* at 312, citing *Commonwealth* v. *Booker*, 386 Mass. 466, 469-470 (1982).

There was forensic evidence which the jury reasonably could have inferred linked the defendant to the crimes. The police found the defendant's T-shirt which was stained with the victim's blood. The jury heard inconclusive evidence of fingerprints obtained from several pieces of the duct tape used to gag the victim, that displayed a "looped type pattern" consistent with the defendant's fingerprints. Perhaps the most incriminating evidence against the defendant was a pair of boxer shorts that contained hair similar to the victim's.[10]

We conclude that these circumstances, "no one of which alone would be enough to convict the defendant, combine to

---

possession of instrument capable of being used in commission of crime relevant to show that defendant had the means of committing offense, and such evidence could evince consciousness of guilt); *Commonwealth* v. *Jackson*, 417 Mass. 830, 843 (1994); *Commonwealth* v. *Toney*, 385 Mass. 575, 584 n.4 (1982).

[8]The defendant first called his mother at 5 A.M., claiming to have found a woman's dead body in his apartment. The defendant made three other telephone calls to his mother, before calling the police at 7:50 A.M. A neighbor of the defendant testified that he saw the defendant at about 6:20 A.M. sitting on a low cement wall in a nearby parking lot, where the defendant offered him a cup of coffee.

[9]Rivera and Langille, along with the defendant, admitted that they were smoking crack cocaine and drinking alcohol on the night the victim was murdered. The autopsy revealed that the victim had lubricating ointment on her vagina area as well as her anus. There was no semen found on the victim, which would indicate the use of a condom. However, when the police conducted a search of the crime scene, they did not find any evidence of drug paraphernalia, condoms, or lubricating ointment. During this three-hour interval, the jury could have inferred that the defendant disposed of this evidence.

[10]The victim's hair was stuck to the inside of the fly area of the defendant's boxer shorts, and fecal matter was found on the outside of the fly. Skin particles were also found on the fly area of the defendant's shorts, as well as covering the victim's body. The jury could have reasonably inferred that the defendant wore his boxer shorts when he raped the victim, both vaginally and anally.

form a fabric of proof that was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant was the person who [raped and] killed the victim." *Commonwealth* v. *Rojas, supra* at 630. See *Commonwealth* v. *Booker, supra* at 470; *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981); *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). The Commonwealth introduced sufficient evidence from which the jury could have inferred the murder was premeditated and deliberate and was committed with extreme atrocity or cruelty while in the furtherance of rape. The judge properly denied the defendant's motion for a required finding of not guilty.

4. *Review under G. L. c. 278, § 33E.* The defendant requests that we exercise our power under G. L. c. 278, § 33E, to order a new trial, or, in the alternative, to reduce his conviction to murder in the second degree or manslaughter. In support of this request, the defendant maintains that the evidence in his case was weak because it did not prove, beyond a reasonable doubt, that he was the person who in fact killed the victim. As we have stated previously, this matter concerns the role of the jury, and we do not sit as a second jury in reviewing cases under G. L. c. 278, § 33E. See *Commonwealth* v. *Martino*, 412 Mass. 267, 289 (1992); *Commonwealth* v. *Luce*, 399 Mass. 479, 485 (1987); *Commonwealth* v. *Smith*, 357 Mass. 168, 181 (1970). We have reviewed the entire record and conclude that there is no reason to exercise our authority under G. L. c. 278, § 33E.

*Judgment affirmed.*