NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-730

COMMONWEALTH

vs.

ALEXANDER BENITEZ MORALES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a).[1]  On appeal, the defendant argues that the trial judge erred in admitting a recording of his interview with the police in evidence because it was substantially more prejudicial than probative and because his statements were not voluntary.  The defendant also contends that there was insufficient evidence to prove that he constructively possessed the firearm.  We affirm.

---

[1] On the day of trial, the Commonwealth dismissed one count of assault and battery on a person sixty years of age or older or a person with a disability, G. L. c. 265, § 13K (a 1/2) and one count of assault and battery with a dangerous weapon, G. L. c. 265, § 15A (b).

Background.  "Because the defendant challenges the sufficiency of the evidence presented, we summarize the facts the jury could have found in the light most favorable to the Commonwealth."  Commonwealth v. Tavares, 471 Mass. 430, 431 (2015).  On January 31, 2023, Fitchburg police officers responded to an apartment for a well-being check.  Upon entering the apartment, the officers opened a bedroom door and saw the defendant and a woman sleeping in a bed.  During a search of the kitchen, to which the owner of the apartment consented, the officers noticed that one of the drop ceiling tiles had been pushed up and was not sitting flush like the other tiles.  An officer removed that tile and found a firearm.

After waking up the defendant, the officers arrested him and brought him to the police station.  A detective spoke to the defendant in English.  The defendant said he understood the detective.  The detective provided the defendant his Miranda rights in English and then questioned him.  The defendant "had a very thick accent, sometimes hard to understand."  The detective testified that the defendant believed the gun found at the apartment was broken, and "he was basically working at getting another one from where he got that one from."  The defendant did not believe the gun worked because it was "stuck back."  A

2

portion of the recorded interview was admitted into evidence and played for the jury.[2]

At trial, testifying through an interpreter, the defendant stated that he learned about the gun from the police, who kept saying it was his.  He said that he never hid the gun in the kitchen and never touched the gun.  He testified, "I never said that I touched a pistol in that home, nothing, until they told me they found it.  And they were saying that he said that it was mine.  That was something I didn't know." The defendant also said he had taken three medications the day the officers came to the apartment and does not remember much about the interview.[3]

Discussion.  1.  Admission of defendant's recorded interview.  Prior to trial, the defendant moved to exclude the recorded interview and prevent testimony regarding his statements to the detective.  Defense counsel argued that the recorded statement was "more prejudicial than relevant," confused the issues, and mislead the jury since the defendant was a native Spanish speaker who did not speak English very

---

[2] The entire recorded interview was approximately fifty minutes long.  It was edited to a three-minute-long portion. Subsequent references to the "recorded interview" are to the admitted the three minute clip.

[3] It is unclear from the record whether the defendant took the medications the night before the police arrived at the residence or the same day.  Regardless, our analysis remains the same.

3

well.  The trial judge watched the recorded interview and stated, "It's very difficult to understand" and "I really couldn't make out half of what [the defendant] said."  She also stated, "there's some limited conversation I could make out with respect to the firearm, him saying it was, you know, broken and there were other people there, but it was very disjointed and very difficult to say -- to hear."  Ultimately, the judge stated, "I don't find it particularly prejudicial," and ruled that the recorded interview was admissible.

Because the defendant objected to the admission of his recorded statements, we review to determine whether there was prejudicial error.  See Commonwealth v. Grady, 474 Mass. 715, 724-725 (2016) (objection preserved by pretrial motion in limine).  "This requires a two-part analysis: (1) was there error; and (2) if so, was that error prejudicial."  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

"We review a judge's evidentiary rulings for an abuse of discretion."  Commonwealth v. Andre, 484 Mass. 403, 414 (2020).  "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge."  Commonwealth v. Dunn, 407 Mass. 798, 807 (1990).  Generally, relevant evidence is subject to exclusion "if its probative value is substantially outweighed by

4

a danger of," among other things, "unfair prejudice, confusing the issues, [or] misleading the jury."  Mass. G. Evid. § 403 (2024).  A trial judge's determination of these issues will not be disturbed except for palpable error.  See Commonwealth v. Young, 382 Mass. 448, 462-463 (1981).

The record demonstrates that the trial judge carefully balanced all the relevant factors.  She considered the probative value of the defendant's statements and the potential for confusing the jury based on the difficulty of understanding the defendant's words.  The trial judge watched the recorded interview, as did we.  Although the defendant's words are difficult to understand, he is not incoherent.  It is clear that the defendant told the detective that he believed the firearm was broken, and that he was working on getting another one from where he got that one from.  The defendant also said that he believed the gun did not work because it was "stuck back."  It is indisputable that the recorded interview was highly relevant.

We conclude that the judge did not abuse her discretion in admitting the defendant's recorded statements.  To the contrary, she carefully considered the issue and was "entitled to balance the conflicting interests and to conclude, as a matter of judicial discretion" that the jury was entitled to view the

5

recorded interview.  Commonwealth v. Haywood, 377 Mass. 755, 763 (1979).  Thus, there was no error in its admission.[4]

2.  Voluntariness of defendant's waiver of Miranda.  For the first time on appeal, the defendant argues that his recorded statements should not have been admitted because he did not make a knowing and voluntary waiver of his Miranda rights.  We agree with the Commonwealth's assertion that because the defendant did not raise the Miranda issue in the trial court, the defendant's claim is waived and there is an inadequate record for us to review the issue.  See Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).  Furthermore, based on the record before us, there is insufficient evidence to consider the defendant's claim for a substantial risk of a miscarriage of justice.  See Commonwealth v. McFarlane, 102 Mass. App. Ct. 264, 268 (2023) (defendant waived issue of voluntariness of admission to police where he did not file motion to suppress and did not object when statement was admitted at trial).

The defendant's claim that he did not understand English and therefore, could not have validly waived his Miranda rights is speculative, as there is no evidence that the defendant did not understand the Miranda warnings.  To the contrary, the

---

[4] Similarly, the detective's testimony about the recorded interview was relevant and not unduly prejudicial.  We see no error in its admission either.

detective testified that he asked the defendant "if he was comfortable and understand what I was saying," to which the defendant affirmed that he did.  Simply utilizing an interpreter at trial does not render the defendant's Miranda waiver involuntary.  See Commonwealth v. Iglesias, 426 Mass. 574, 577 (1998) (fact that interpreter was provided for defendant "does not establish that the defendant did not understand English sufficiently for a valid Miranda waiver").

Similarly, the defendant claims he was under the influence of drugs at the time of his statements to the detective; however, the transcript does not support this contention.  The only information in the record concerning the defendant's use of medication is his testimony that he did "not recall too much" of his conversation with the detective and "they woke me up, they took me over there and I was still under the medication." Accordingly, there is not sufficient evidence for us to reach such a conclusion.  See Commonwealth v. Woods, 419 Mass. 366, 371 (1995) (appellant's burden "to ensure that an adequate record exists for an appellate court to evaluate").

3.  Voluntariness of defendant's statements.  In his reply brief, the defendant argues that voluntariness was a live issue at trial and therefore, the judge was required to consider

7

whether the defendant's admissions were voluntary sua sponte.[5] We disagree.

In order to use a defendant's statements against him or her at trial, they must have been made voluntarily. See Commonwealth v. Brown, 449 Mass. 747, 765 (2007), citing Commonwealth v. Sheriff, 425 Mass. 186, 192 (1997). "If the defendant does not raise the issue of voluntariness, the judge has a sua sponte obligation to conduct a voir dire only if the voluntariness of the statements is a live issue such that there is evidence of a substantial claim of involuntariness" (quotation and citation omitted). Brown, supra. See Commonwealth v. Gallett, 481 Mass. 662, 686 (2019), quoting Commonwealth v. Kirwan, 448 Mass. 304, 318 (2007) (for question of voluntariness to be considered live issue, "substantial evidence of involuntariness [must be] produced"). If voluntariness "is not a 'live issue' at trial, there is no obligation for the judge either to conduct a voir dire, or to instruct the jury on the humane practice rule." Commonwealth v. Pavao, 46 Mass. App. Ct. 271, 274 (1999).

It was not until the defendant testified on cross examination that there was any evidence that the defendant's

---

[5] Issues raised for the first time in an appellant's reply brief are not properly before us. See Allen v. Allen, 86 Mass. App. Ct. 295, 302 n.11 (2014). Even if these issues were properly before us, we find no error in the judge's conclusions.

statement may have been involuntary.  The defendant explained that he takes three medications at nighttime and when the officers woke him up on the day of the incident, he was "still under the medication."  Also, the video of the interview, which the judge watched, does not make voluntariness a live issue.  See Kirwan, 448 Mass. at 318 (voluntariness not live issue where defendant claimed he was intoxicated, but no evidence of his intoxication was presented at trial).  In these circumstances, we do not find that the evidence created a "substantial claim of involuntariness."  Commonwealth v. Stroyny, 435 Mass. 635, 646 (2002).

Even if the trial judge had erred in not considering the voluntariness of the defendant's statements, there was no substantial likelihood of a miscarriage of justice.  See Commonwealth v. Richards, 485 Mass. 896, 914 (2020).  Here, any evidence of involuntariness was minimal; it did not reach the magnitude of involuntariness as was found, for example, to create a substantial likelihood of a miscarriage of justice in Commonwealth v. Bohigian.  486 Mass. 209, 220 (2020) (error for judge to not make determination regarding voluntariness when defendant "wasn't fine" during questioning where he had visible head injury and showed signs of concussive head trauma).  Nor does the recorded interview show any coercive techniques or force by the police.

9

Given these circumstances, we conclude that there is no serious risk that the judge would have excluded the recorded interview if the issue had been brought to her attention or that the jury, had it received a humane practice instruction, "would have concluded that the Commonwealth failed to meet its burden of proving that the defendant's statements to police were voluntary and therefore disregarded them."  Richards, 485 Mass. at 914.

4.  Sufficiency of evidence.  We review the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  The defendant argues that there was insufficient evidence that he had constructive possession of the firearm.  Constructive possession requires proof that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control" over the firearm (citation omitted).  Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989).  "A defendant's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at

10

the trial" (quotation and citation omitted).  Commonwealth v. Summers, 93 Mass. App. Ct. 260, 262 (2018).

Here, the defendant admitted that he often stayed in the apartment.  He also described the condition of the firearm.  The defendant told the detective that he believed the firearm was broken because it was "stuck back" and that he was working on getting another one from where he got that one from.  We conclude that this evidence was sufficient to prove that the defendant had knowledge of the firearm and the ability and intent to exercise dominion and control over it.

Judgment affirmed.

By the Court (Vuono,
  Brennan & D'Angelo, JJ.[6]),

Clerk

Entered:  March 27, 2025.

---

[6] The panelists are listed in order of seniority.